USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2277 UNITED STATES, Appellee, v. LUIS A. RODRIGUEZ-CARMONA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ___________________ ____________________ Before Selya, Boudin and Lynch, Circuit Judges. ______________ ____________________ Luis A. Rodriguez-Carmona on brief pro se. _________________________ Guillermo Gil, United States Attorney, Warren Vazquez, Assistant _____________ ______________ United States Attorney, and Jose A. Quiles Espinosa, Senior Litigation _______________________ Counsel, on brief for appellee. ____________________ March 26, 1997 ____________________ Per Curiam. After a jury trial, appellant Luis ___________ Rodriguez-Carmona was convicted of aiding and abetting the importation and possession of heroin with intent to distribute in violation of 21 U.S.C. 841(a), 952, and 18 U.S.C. 2. He was sentenced to sixty-three months' imprisonment and five years of supervised release. Proceeding pro se on appeal, appellant seeks to overturn his ___ __ conviction due to alleged prosecutorial misconduct and ineffective assistance of defense counsel. We affirm the conviction, but we decline to reach appellant's ineffective assistance of counsel claims. I. Because appellant does not challenge the sufficiency of the evidence, we provide a neutral summary of the evidence to enable us to determine whether the events about which appellant complains on appeal were harmless or prejudicial. See, e.g., United States v. Morla-Trinidad, 100 F.3d 1, 2 ___ ____ _____________ ______________ (1st Cir. 1996); United States v. Hardy, 37 F.3d 753, 755 _____________ _____ (1st Cir. 1994).  Acting in response to an intelligence alert, two U.S. Customs inspectors identified appellant and Edward Iba ez Cosme (Iba ez), when they arrived at Puerto Rico's Luis Mu oz Mar n International Airport on a flight from Caracas, Venezuela. Upon inquiring where he should go to clear customs, Iba ez was taken for a secondary inspection. During -2- the course of this inspection a customs inspector performed a pat-down search and identified something concealed in Iba ez's crotch. When instructed to lower his pants, Iba ez stated, "me mangaste, you caught me" and revealed a package containing 36 pellets of heroin similar to those often swallowed by drug smugglers. Iba ez was immediately arrested and given the Miranda warnings. He told the customs _______ inspectors that he was travelling alone and that the drugs belonged to him.  After the heroin had been found on Iba ez, a senior customs inspector took appellant to a secondary inspection area for questioning and examination of his luggage. Seven Western Union money transfer receipts bearing appellant's and Iba ez's names were found in appellant's bag, five of which had been signed by Iba ez. Although appellant had initially stated that he was travelling alone, when questioned further he said that Iba ez had given him the receipts. Appellant was also placed under arrest and taken with Iba ez to a local hospital for x-rays, which proved negative.1 1 Appellant and Iba ez were both indicted on drug trafficking charges. Shortly before trial, Iba ez entered into a plea agreement. He thereafter became the government's star witness at appellant's trial. After acknowledging the  ____________________ 1At the hospital, Iba ez encountered a male acquaintance 1 and told him that he had been caught drug trafficking. -3- plea agreement, which was admitted into evidence, and the fact that he could be prosecuted for perjury if he failed to tell the truth, Iba ez testified at some length about his past criminal exploits - without objection from defense counsel.2  2 Iba ez then described two smuggling ventures that he claimed to have undertaken on appellant's behalf. In the first such venture, Iba ez and a friend went to Venezuela to procure a heroin sample for appellant. As the return flight to Puerto Rico was delayed, appellant wired Iba ez money so that he and his friend could fly to Puerto Rico first class. Iba ez identified one of the Western Union receipts that had been found in appellant's luggage as the receipt for the funds that had been used for the return plane tickets on that occasion. He claimed that he delivered 10 pellets of heroin to appellant as a result of this trip. Iba ez testified that the heroin that he delivered to appellant was supplied by a  ____________________ 2The prosecutor first elicited Iba ez's criminal record, 2 which included convictions for theft of a toolbox, auto theft, and contempt. In an effort to minimize the risk of impeachment on cross-examination, the prosecutor next required Iba ez to describe his criminal activities that had not resulted in convictions. Iba ez then testified that he had transported drugs to Spain via Puerto Rico the preceding November and that he had participated in an elaborate escapade which included a hold-up of a gas station, an ensuing shoot-out, hit-and-run, carjacking, and automobile crash, after which Iba ez and his cohorts eluded the police by escaping through a waterfall. While the trial judge twice convened bench conferences to question the relevance of this testimony, defense counsel raised no objection to it.  -4- Colombian, Cesar Augusto Buendia, and that the remaining Western Union receipts found in appellant's luggage reflected drug payments that appellant had made to Buendia.3  3 With regard to the second smuggling venture, which resulted in the arrests of Iba ez and appellant, Iba ez testified that he recruited his cousin Jose Iba ez (Jose) to assist in carrying the drugs but that Jose did not have a passport. As a result all three men - appellant, Iba ez, and Jose - travelled to Connecticut to secure passports so that they could travel to Venezuela and return carrying drugs to Puerto Rico.4 Because Iba ez informed the passport agency 4 that the three were scheduled to travel to Venezuela very soon, the agency issued the men passports on the very day that they applied for them. The three then returned to Puerto Rico and left for Venezuela on March 22, 1995. Iba ez related that after staying in Venezuela briefly the three men travelled to Colombia and checked into a hotel in accordance with the instructions of their supplier, Buendia. Eventually, Buendia caused the heroin to be delivered to appellant's hotel room, where Iba ez washed the pellets and divided them into two packages. According to  ____________________ 3Iba ez described how appellant sent him to Western Union 3 on multiple occasions to wire money to Buendia.  4Iba ez testified that it was necessary to travel to 4 Connecticut, where Jose had been born, to secure Jose's birth certificate for his passport application. -5- Iba ez, appellant was present when the heroin was delivered and while he was packaging it. Iba ez testified that appellant had business at his drug point in Puerto Rico, so he and Iba ez decided to return there with the heroin. Jose was left behind to return later with two pairs of tennis shoes that were being loaded with heroin.  Iba ez testified that, initially, Iba ez body-carried one package with 20 pellets of heroin, while appellant carried a similar package with 16 pellets. Appellant became scared after their luggage was searched at the Venezuelan border, so he instructed Iba ez to carry all the heroin thereafter. The two flew to Caracas and from there to Puerto Rico without incident. Upon arriving in Puerto Rico, appellant instructed Iba ez to go up front to be checked first. Iba ez testified that although he initially told the authorities that the drugs were his, in fact they belonged to appellant.  Iba ez's testimony was corroborated by the passports and plane tickets of appellant and Iba ez, which were admitted into evidence, and the testimony of Richard Herdmann, a senior customs supervisor. Herdmann testified that after Iba ez had been found with the heroin, he noticed that the defendants' passports and plane tickets bore -6- sequential numbers interrupted by one digit.5 As Herdmann 5 was responsible for determining whether any other persons were involved in drug trafficking, he made inquiries to determine who had been issued the passport and plane ticket with the intervening numbers. Herdmann testified that these items had been issued to Jose, but that he had not boarded the plane in Venezuela.6  6 Appellant did not testify at his trial. Although defense counsel had announced that Jose would be testifying in appellant's defense, the record indicates that Jose was arrested at the outset of appellant's trial and charged with the same crime as appellant (i.e., aiding and abetting the importation of heroin), and conspiring to import heroin. Jose was never called as a witness.7 Defense counsel relied on 7 excerpts from the testimony of the customs officers and Iba ez to argue that Iba ez acted alone in the smuggling endeavor and that appellant was a legitimate businessman  ____________________ 5Iba ez's passport bore the number 140533715 while 5 appellant's passport bore number 140533717. Both passports had been issued in Connecticut on March 3, 1995. Similarly, Iba ez's plane ticket for his return flight to Puerto Rico bore a number ending in 10, while appellant's plane ticket ended in 12.  6Herdmann also ascertained that Jose's passport had been 6 issued at the same time and place as those of appellant and Iba ez.  7It is undisputed that Jose was tried after appellant and 7 acquitted on all charges. See United States v. Jose Iba ez- ___ _____________ ____________ Maldonado, #95-CR-195(SEC).  _________ -7- unaware of the drug venture. The jury rejected this defense. Remaining facts will be discussed in the context of the arguments that appellant raises.  II. On appeal, appellant asserts that the prosecutor pursued a "carefully tailored" strategy that was designed to impermissibly bolster the credibility of the government's chief witness (Iba ez), while simultaneously depriving appellant of his own star witness (Jose). Consistent with this general theme, appellant contends that his conviction should be reversed on three grounds. First, appellant argues that certain remarks that the prosecutor made in his rebuttal argument improperly vouched for the credibility of Iba ez and expressed the prosecutor's personal opinion about how drug traffickers work. Second, appellant contends that the prosecutor violated his Sixth Amendment right to compulsory process by arresting Jose solely to cause him to invoke his privilege against self-incrimination, thereby depriving appellant of his testimony. Finally, appellant contends that he was deprived of the effective assistance of counsel because his trial counsel failed to move to suppress the evidence seized by the customs officers and further failed to -8- protect appellant's right to compulsory process by taking steps to ameliorate the government's arrest of Jose.  We first examine the prosecutor's conduct, mindful that because defense counsel did not object to it below, we review only for plain error. See, e.g., United States v. Sullivan, ___ ____ ______________ ________ 85 F.3d 743, 751 (1st Cir. 1996). This means that we must view the prosecutor's conduct in the context of the entire trial and that we may reverse only if we conclude that, "'a miscarriage of justice would otherwise result,'" or that a plain error "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" United States v. _____________ Olano, 507 U.S. 725, 736 (1993)(citations omitted); United _____ ______ States v. Josleyn, 99 F.3d 1182, 1197 (1st Cir. 1996). ______ _______ Appellant has failed to meet this "hard-to-satisfy standard." United States v. Taylor, 54 F.3d 967, 977 (1st Cir. 1995). _____________ ______ III. The Prosecutor's Rebuttal _________________________ In cross-examining Iba ez, defense counsel emphasized the fact that Iba ez had first told the authorities that the drugs belonged to him alone. Defense counsel's closing argument implied that Iba ez had changed his story to incriminate appellant only after he executed the government's _____ plea agreement.8 Appellant now contends that the prosecutor 8  ____________________ 8Referring to Iba ez, defense counsel argued that, "it was 8 not until the government made a plea agreement with him [that] he reverted (sic) his testimony." -9- engaged in improper witness-vouching when he attempted to rebut defense counsel's insinuation by referring to the plea agreement as follows: .... that piece of evidence ... will reflect that definitely Mr. Iba ez was fully debriefed and examined prior to the signing of the plea agreement. So the ______ government already heard, knew, _________________________________________ investigated, and corroborated the _________________________________________ information given by Iba ez prior to the _________________________________________ signing of the plea agreement and prior ______________________________ to bringing him here to testify [to] the facts to you. Simply it did not become a magic act as presented by defendant in saying that after the plea agreement was made then he changed his -- his version. No.  These things are investigated thoroughly _________________________________________ first before even thinking of signing a _________________________________________ plea agreement, corroborated by the _________________________________________ agency and also investigated. So read _______________________________ the totality of the plea agreement, and you will see the terms of it. Just don't take a word of mouth explanation. Just read the evidence. It's there in evidence. So you will know how this takes place, and that will assist you in reaching the truth in your deliberations. (emphasis supplied).  "[A] prosecutor may not imply that the government has inculpatory information that is not in evidence." United ______ States v. Manning, 23 F.3d 570, 573 (1st Cir. 1994)(citations ______ _______ omitted). Comments like, "the government ... investigated, and corroborated the information given by Iba ez" and the remaining language emphasized above could fairly be understood to imply that the government had an additional source of information from which it learned Iba ez's story -10- even before he agreed to cooperate. We agree that these remarks crossed the line into improper vouching, and the government essentially concedes as much. See United States ___ _____________ v. Tajjedini, 996 F.2d 1278, 1284 (1st Cir. 1993) (noting _________ that it is improper for a prosecutor to even "seem to rely on matters not in evidence"). Appellant next assails the following portion of the prosecutor's rebuttal, which was made in response to defense counsel's suggestion that appellant's apparent involvement in the crime was an accident: Ladies and gentlemen ... I submit to you [that there are] too many coincidences for this to be a mere accident. This is _______ how drug traffickers work. Some are _____________________________ smarter than others and will tell you, listen, they almost caught me. You carry the drugs. Keep -- keep up front. I'm going to stay in the back ... in case something happens. That's what happened here: a very shrewd trafficker, Rodriguez, putting the other guy up front so if he gets caught he gets the ... problem. (emphasis supplied). Appellant contends that the comment, "[t]his is how drug traffickers work" was an improper statement of opinion that was not supported by the evidence.9 We agree that this 9 comment evinces a poor choice of words. While the statement may have been construed as a simple rhetorical invitation to  ____________________ 9Appellant argues that whether or not drug traffickers use 9 "mules" to avoid apprehension in the way the prosecutor claimed that Iba ez was used here was a subject that required an expert opinion before the prosecutor could comment on it. -11- find appellant guilty based on Iba ez's testimony, it arguably implied that appellant was guilty because his alleged conduct, as described by Iba ez, was consistent with the prosecutor's experience with other drug traffickers. Such an implication is, of course, improper. See, e.g., ___ ____ Tajjedini, 996 F.2d at 1284 ("it is ... improper for a _________ prosecutor to insert his own credibility or opinions into argument").  Nevertheless, we do not think that these remarks constitute plain error, for the record suggests that it is highly unlikely that appellant was prejudiced by them. See ___ Olano, 507 U.S. at 735 (specific showing of prejudice is _____ normally required to establish plain error).10 To be sure, 10 the government's case hinged upon the credibility of Iba ez, and the government could ill afford to vouch improperly for him. Nevertheless, both of the remarks challenged here appear to be instances of accidental overkill rather than a deliberate attempt to mislead the jury. Iba ez's testimony  ____________________ 10The "plain error" test requires that we consider the 10 prosecutor's remarks in light of all the "attendant circumstances," including "(1) the extent to which the prosecutor's conduct is recurrent and/or deliberate, (2) the extent to which the trial judge's instructions insulated the jury against, or palliated, the possibility of unfair prejudice, and (3) the overall strength of the prosecution's case, with particular regard to the likelihood that any prejudice might have affected the jury's judgment." Taylor, ______ 54 F.3d at 977 (citation omitted). The weight of the evidence of guilt or innocence is the most important factor in this analysis. See Arrieta-Agressot v. United States, 3 ___ ________________ ______________ F.3d 525, 528 (1st Cir. 1993). -12- was, in fact, corroborated by the plane tickets, the passports, and the Western Union receipts that had been found in appellant's luggage. We think it likely that this evidence was the outside corroboration to which the prosecutor referred in his remarks concerning the plea agreement and that the jury understood as much. Finally, we note that the trial judge repeatedly instructed the jury that the arguments of counsel do not constitute evidence and that its decision was to be based on the evidence alone. The record indicates that the jury returned three questions before reaching its verdict, thus indicating that it carefully deliberated over the elements of the offenses and did not simply accept the prosecutor's arguments at face value.11 We think this sound evidence that the jury obeyed 11 the court's instructions to resolve the case on the evidence and was not seduced to convict on speculation prompted by the prosecutor's rebuttal. Accordingly, we are confident that the prosecutor's improper remarks did not so poison the trial as to require reversal for plain error.12 12  ____________________ 11The jury requested a copy of the court's instructions 11 and the relevant statutes. It also requested that the court clearly define the term "possession" and a copy of that portion of Iba ez's testimony wherein he alleged that appellant had instructed him to carry all of the heroin.  12Appellant also contends that the prosecutor improperly 12 elicited evidence of Iba ez's prior bad acts under the guise of fulfilling the plea agreement's requirement that he testify truthfully and that the trial judge should not have admitted this testimony. See note 2, supra. We agree that ___ _____ -13- The Arrest of Jose  __________________ Appellant next contends that the prosecutor violated his Sixth Amendment right to compulsory process by arresting his star witness, Jose Iba ez, solely as a ploy to prevent him from testifying for the defense. In a related vein, appellant contends that defense counsel rendered ineffective assistance because he failed to object to Jose's arrest and failed to seek a court order that granted Jose immunity or required that the government do so. Both claims rely on the following additional facts, some of which are beyond the scope of the record but are conceded as true by the government.13  13 It appears that Jose arrived in Puerto Rico three days after appellant and Iba ez were arrested and that he was immediately questioned and released by the customs authorities, who found no drugs. A few months later, and approximately eleven days before appellant's trial began, Iba ez agreed to plead guilty and testify for the government. Shortly thereafter, defense counsel announced that Jose would  ____________________ much of this evidence might have been excluded. But defense counsel raised no objection to its admission. Instead, he relied on it as grounds for attacking Iba ez's credibility. As Iba ez's criminal exploits were just as likely to make the jury disbelieve him as otherwise, we cannot say admission of this evidence was plain error. 13These facts pertain to appellant's compulsory process 13 claim and one of his ineffective assistance of counsel claims. The latter is discussed in part IV, infra. _____ -14- be called as a witness for the defense.14 As noted above, 14 Jose was arrested on the first day of appellant's trial, when he arrived at the courthouse to testify for appellant. The record discloses that after announcing that Jose had been arrested, the Assistant United States Attorney (AUSA) immediately agreed to make Jose available to defense counsel to interview and call as a witness. He also observed that Jose would probably reevaluate with his own counsel whether he wished to testify. (Tr. 9-11). Defense counsel never objected to Jose's arrest. Instead, he proceeded with the trial and made no complaints about a violation of appellant's right to compulsory process. Appellant alleges that "the scuffle created by" Jose's arrest prevented defense counsel from calling him as a witness. He has submitted an affidavit from his trial counsel to support this assertion.15 15  ____________________ 14This is apparent from defense counsel's motion to 14 continue the trial (original paper #28). That motion indicates that defense counsel first interviewed a witness who could provide exculpatory testimony on June 7, 1995, i.e., five days after Iba ez executed his plea agreement on June 2, 1995. We presume that the witness identified in the motion is Jose. 15Defense counsel averred that Jose could have provided 15 material, exculpatory testimony to the effect that he did not observe any drug-related activities by appellant during the time that they spent together in Venezuela. Once Jose was arrested, counsel believed that his ethical obligations prohibited him from contacting Jose until after he was properly represented by counsel. Counsel swore that due to the fact that he was "heavily engaged" in appellant's defense during the course of the two-day trial, it was impossible for him to ascertain the status of Jose's case or to coordinate with Jose's counsel to address Jose's Fifth Amendment -15- Appellant now complains that the only explanation for the timing of the arrest is that it was designed to compel Jose to invoke his privilege against self-incrimination and thereby deprive appellant of his testimony.16 At the outset 16 we are compelled to observe that this claim was not raised below. A strong argument can be made that it has been waived. Cf. United States v. Theresius Filippi, 918 F.2d __ ______________ _________________ 244, 246 (1st Cir. 1990)(holding defendant waived right to compulsory process when defense counsel decided to proceed with trial without material witness). But as the government does not make this argument, we will give appellant the benefit of the doubt and assume the claim was forfeited, not waived. See Olano, 507 U.S. at 733-34 (discussing distinction ___ _____ between "waiver" and "forfeiture"). This benefit is of little moment, for the record, even as supplemented, does not establish that the arrest of Jose was a plain error that violated appellant's right to compulsory process.  In order to make out a violation of the right to compulsory process, the appellant must show that "some contested act or omission (1) can be attributed to the sovereign and (2) causes the loss or erosion of testimony  ____________________ concerns. Counsel's affidavit concludes with the assertion that "these circumstances prevented me from calling ... Jose ... as a witness despite the fact that his testimony could ha[ve] changed the outcome of the trial."  16Appellant says that this conclusion is bolstered by the 16 fact that Jose was ultimately acquitted on all charges.  -16- which is both (3) material to the case and (4) favorable to the accused." United States v. Hoffman, 832 F.2d 1299, 1303 ______________ _______ (1st Cir. 1987). "[C]ausation is an essential building block in ...[this] edifice," id. It is on this block that ___ appellant's claim stumbles. For while it is clear that the government is responsible for Jose's arrest, and we will assume, for the sake of argument only, that his testimony would have been material and exculpatory, the record simply does not show that the arrest caused the loss of Jose's testimony. Defense counsel never subpoenaed Jose. He did not even ascertain that, if subpoenaed, Jose would indeed invoke the Fifth Amendment and decline to testify. Consequently, it is not at all clear that Jose's arrest actually rendered his testimony unavailable. Accordingly, we cannot say that this arrest was a "plain error" that violated appellant's right to compulsory process. Cf. United States ___ _____________ v. Arboleda, 929 F.2d 858, 868 (1st Cir. 1991)(holding ________ appellant failed to establish government violated his right of access to a witness where defense counsel never formally attempted to meet with witness). IV. Ineffective Assistance of Counsel Claims ________________________________________ Appellant argues that defense counsel was ineffective because he failed to object to the arrest of Jose and failed to seek a court order that either granted Jose use immunity -17- or required that the government do so. Appellant also maintains that defense counsel erred by failing to file a motion to suppress the evidence seized by the customs inspectors.  As a general rule, this court does not consider ineffective assistance of counsel claims on direct appeal unless the critical facts are not in dispute and the record is sufficiently developed to permit reasoned consideration of the claim. See, e.g., United States v. Collins, 60 F.3d 4, ___ ____ _____________ _______ 7 n. 1 (1st Cir. 1995); United States v. Natanel, 938 F.2d _____________ _______ 302, 309 (1st Cir. 1991), cert. denied, 502 U.S. 1079 (1992). _____ ______ We do not think that the present record is sufficiently developed to allow us to dispose of the foregoing issues. Accordingly, we decline to reach appellant's ineffective assistance of counsel claims in the context of this appeal. Appellant remains free to raise these issues in a motion for post-conviction relief under 28 U.S.C. 2255. See, e.g., ___ ____ United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993), _____________ ____ cert. denied, 511 U.S. 1086 (1994). The judgment of _____ ______ conviction is otherwise affirmed. ________ -18-