USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ Nos. 92-1210 93-2050 UNITED STATES, Appellee, v. FREDERICK HARDY, Defendant - Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Torruella and Stahl, Circuit Judges, ______________ Carter,* District Judge. ______________ _____________________ Owen S. Walker, Federal Defender Office, for appellant. ______________ Michael J. Pelgro, Assistant United States Attorney, with __________________ whom Donald K. Stern, United States Attorney, and Ralph F. Boyd, _______________ ______________ Jr., Assistant United States Attorney, were on brief for ___ appellee. ____________________ October 12, 1994 ____________________ ____________________ * Of the District of Maine, sitting by designation. TORRUELLA, Circuit Judge. A grand jury returned a _____________ five- count indictment alleging various firearm related charges against defendant/appellant Frederick Hardy and his co-defendant Raymond Moreno, Jr. A trial was held and the jury found both defendants guilty on all counts. Moreno challenged his conviction in a separate appeal. United States v. Moreno, 991 _____________ ______ F.2d 943 (1st Cir.) (Torruella, J., dissenting), cert. denied, ____________ 114 S. Ct. 457 (1993). In this appeal, Hardy claims that the government made several impermissible arguments at trial, including improperly commenting in its closing on Hardy's decision not to testify at trial. We believe that the government's comment on Hardy's silence at trial violated the Fifth Amendment, and that this error, coupled with other improper arguments, deprived Hardy of a fair trial. We therefore vacate Hardy's convictions and order a new trial. I. BACKGROUND I. BACKGROUND __________ A. Facts A. Facts We are concerned here not with a claim of insufficient evidence, but with a case in which we find that the government improperly commented on Hardy's right not to testify and made other inappropriate remarks during the course of the trial. Accordingly, our description of the facts is not limited in this case to evidence and inferences most favorable to the government, but rather it is designed to provide a balanced picture of the evidence appropriate for determining whether the comments and remarks were harmless or prejudicial. Arrieta-Agressot v. United ________________ ______ -2- States, 3 F.3d 525, 528 (1st Cir. 1993).1 ______ On the evening of April 18, 1991, a group of five law enforcement officers, while on foot patrol in the Lenox Street Housing Development in Boston, Massachusetts, heard a series of gunshots coming from another area within the development. Three of the officers, Officers Garvey, Perkins and Devane, ran in the direction of the shots; the other two, Officer Murphy and Trooper Drummy, returned to a parked cruiser. As Officers Garvey, Perkins, and Devane were running down Hammond Street, they observed three black males emerge from a courtyard in the direction of the gunshots, run across Hammond Street, and disappear near a cluster of buildings across the street. One of the officers described the three men as running in a line in a "hunched over" manner. The men then disappeared from view. Almost at once, two of the three officers, joined by Officer Murphy (who had left his cruiser to assist in the foot pursuit), saw three men running through a parking lot behind the cluster of buildings, and gave chase. The officers saw one of the three men veer off from the other two and run in a separate direction. The second and third men were then seen by the officers to come together briefly and appeared to pass an object between them. Officer Murphy, who was ____________________ 1 We have previously stated the relevant facts in United States _____________ v. Moreno, 991 F.2d 943 (1st Cir.), cert. denied, 114 S. Ct. 457 ______ ____________ (1993). In light of the fact that we do not view the evidence in the light most favorable to the verdicts in this case, as we did in Moreno, the two recitations of facts differ in some respects. ______ Id. at 944-46. __ -3- closest to the two individuals, described the item being exchanged as a dark object about one to one-and-a-half feet long. The individual who took this object then ran off through a grass courtyard. The individual who passed on the object, Raymond Moreno, Jr., immediately stopped, raised his arms and surrendered. Another police officer, Paul MacIsaac, aided in the pursuit. Upon arriving at the scene, Officer Murphy, who had Moreno in custody, directed Officer MacIsaac to head in the direction where the other man, to whom Moreno had passed the object, had run. Officer MacIsaac followed these directions, and came across two black males at a nearby intersection, standing on a sidewalk, looking into an adjacent field. Officer MacIsaac questioned the two men, conducted a pat-frisk, and then placed the two men in the back of his cruiser. The officer eventually took them to the station for questioning and they were later released. Officer Garvey testified that in order to cut off any escape route that the fleeing suspect might use, he had circled around to the opposite end of the grass courtyard. Officer Garvey soon saw a black male, wearing dark clothes, who was later identified as Frederick Hardy, enter the courtyard. The Officer testified that he never saw Hardy with any weapon in his possession. After telling Hardy several times to stop, Officer Garvey testified that as Hardy raised his arms -- first his right, then his left -- over his head, he heard a soft thud on -4- the ground nearby. Despite being only two to three feet away from Hardy, however, Officer Garvey did not see any object leave Hardy's hands. Hardy was then arrested. Hardy did not possess any firearms when he was arrested. After Officer Garvey took Hardy to a police cruiser, he returned to the area. A search of the area revealed a .32 caliber pistol about five to eight feet from where Hardy had stopped. The officers searched the path between the area of Moreno's arrest and the spot at which Officer Garvey first observed Hardy. The officers found a double-barreled sawed-off shotgun with a 12 1/2 inch barrel, fully loaded with ammunition, hidden in bushes along that route. While Moreno and Hardy were being arrested, Officer Devane was in search of the first of the three runners, who had gone off in a separate direction. Officer Devane discovered a black male, Steven Fern ndes, sweating and out of breath, hiding in some bushes. After arresting Fern ndes and placing him in the cruiser, Officer Devane found a semi-automatic pistol on the ground near where Fern ndes had been hiding. After receiving his Miranda warning at the police _______ station, Hardy said that he had been at the development by himself to visit his niece and ran when he heard shots. Hardy denied knowing Moreno or Fern ndes. At trial, however, a resident of the housing development testified that he had seen Hardy together with Moreno and Fern ndes a number of times during the prior year. Additionally, Officer Dreary of the Boston -5- Police Department testified that in March 1991, he had stopped a red Isuzu Trooper, and that Hardy was the driver and Moreno was a passenger in the front seat. B. Proceedings Below B. Proceedings Below The grand jury returned a five-count indictment against Hardy and Moreno on June 25, 1991. Count One charged Hardy with being a felon-in-possession of a firearm, and Count Four charged Hardy with being a felon-in-possession of ammunition, both of which were in violation of 18 U.S.C. 922(g). Count Two charged Hardy with possessing a firearm, a short-barreled Stevens 12 gauge, double barrel shotgun, in violation of 26 U.S.C. 5861(d). Counts Three and Five charged Moreno with possession of the same short-barreled shotgun and being a felon-in-possession of ammunition. The trial took place over ten days from October 28, 1991 to November 14, 1991. The jury returned guilty verdicts on all five counts. The court then sentenced Hardy to 262 months' incarceration. Hardy appealed both his conviction and his sentence, and on November 5, 1992, this Court, while retaining jurisdiction, remanded the case to the district court with respect to some sentencing issues. The district court then reaffirmed Hardy's sentence, and Hardy again appealed. See ___ United States v. Hardy, 829 F. Supp. 478 (D. Mass. 1993). This _____________ _____ second appeal was then consolidated with the first appeal. II. STANDARD OF REVIEW II. STANDARD OF REVIEW __________________ -6- Hardy argues that the prosecutor improperly commented on his failure to testify at trial, and that this comment constituted a violation of his Fifth Amendment privilege against self-incrimination, which unduly prejudiced his ability to obtain a fair trial. We will utilize a de novo standard to review the __ ____ legal question of whether the prosecutor's argument constituted constitutional error. United States v. Glantz, 810 F.2d 316, 320 _____________ ______ n.2 (1st Cir.), cert. denied, 482 U.S. 929 (1987). We will ____________ review the trial court's decision to deny Hardy's motion for a mistrial, based on this alleged constitutional violation, for an abuse of discretion. Id. (finding that district court abused __ its discretion by ordering a new trial where the court believed that the prosecutor improperly commented on the defendant's failure to testify or produce documents at trial); see also ___ ____ United States v. Turner, 892 F.2d 11, 12-13 (1st Cir. 1989). _____________ ______ III. THE PROSECUTOR'S COMMENT ON THE DEFENDANTS' SILENCE III. THE PROSECUTOR'S COMMENT ON THE DEFENDANTS' SILENCE ___________________________________________________ A. Did the Prosecutor's Comment Violate the Fifth Amendment? A. Did the Prosecutor's Comment Violate the Fifth Amendment? The most serious argument that Hardy raises in this appeal concerns the prosecutor's closing argument at trial.2 In Griffin v. California, 380 U.S. 609, 615 (1964), the United _______ __________ States Supreme Court held that the Fifth Amendment's self- incrimination clause forbids the prosecution from commenting on an accused's failure to take the stand and testify during a trial. A prosecutor's comment is improper where, under the ____________________ 2 Defendant Moreno did not raise this Fifth Amendment argument in his appeal. -7- circumstances of the case, "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Glantz, 810 F.2d at 322 (citations ______ omitted). A prosecutor's comment does not therefore need to be direct; rather, a prosecutor may run afoul of the rule in Griffin _______ by making such comments inferentially. See Glantz, 810 F.2d at ___ ______ 322; see, e.g., United States v. Skandier, 758 F.2d 43, 45 (1st ___ ____ _____________ ________ Cir. 1985) (prosecutor's question during closing as to how defense counsel would explain certain events which occurred, in a case where the defendant had not taken the stand, was improper); United States v. Flannery, 451 F.2d 880, 882 (1st Cir. 1971) ______________ ________ (prosecutor's comment that certain government evidence was uncontradicted, when contradiction would have required the defendant to take the stand, was improper). We believe that here, the prosecutor improperly called attention to the failure of Hardy to take the stand and testify at trial. The prosecutor stated: Ladies and gentlemen, the evidence here, the only reasonable conclusion that can come from this evidence is that Mr. Hardy possessed that .32 caliber pistol loaded, Mr. Moreno possessed the sawed-off shotgun loaded, and that during the course of the chase, Mr. Moreno passed it off to Mr. Hardy so that he could get rid of it. What the evidence shows is that these two defendants that night were running and hiding. They'd been involved in that incident and then they unfortunately had the misfortune of running right into the police who just happened to be in the area, and they were running and hiding, running from the -8- police and hiding the evidence from the police. They're still running and hiding ________________________________ today. The time has come for them to _________________________________________ stop running and stop hiding. The time _____________________________ has come for them to be held accountable for the wrongful acts that they committed on the night of April 18th, 1991 in Boston. That time is now and only you can hold them accountable. Thank you. (emphasis added). Defense counsel objected and requested a limiting instruction. The district court was initially concerned that such an instruction might hurt rather than help, because the jury might not have construed the prosecutor's remark as a comment on defendants' silence. The court then asked the government: Tell me this: In what other sense can the Government argue that [the defendants] are running and hiding even at this time? The government replied: Because, your Honor, I'm just drawing an analogy between their running and hiding on that night and the Government's burden of proving guilt beyond a reasonable doubt. The court stated: I'm going to give the limiting instruction. It doesn't satisfy me. The court then gave the following instruction to the jury: Members of the jury, I sustain the objection to the argument . . . that even today the defendants are running and hiding. You will disregard that argument and not consider it in any respect in your consideration of the evidence in this case. The court then asked defense counsel if they requested further instructions, and they replied no. The defendants moved for a -9- mistrial, and the court denied these motions.3 The prosecutor's comment during his closing set up an analogy between what the defendants were allegedly doing on the night of the crime -- running and hiding -- and what the prosecutor believed they were doing during the trial -- running and hiding. Of course, the defendants were not literally running from the trial or hiding during the trial. Rather, they were both in custody and were sitting silently during each day of the proceeding. Neither defendant testified on his own behalf. The natural and necessary implication of the prosecutor's remark was therefore that the defendants were running from the evidence presented against them, and hiding behind their right to silence during the trial. The prosecutor's comment therefore violated the Fifth Amendment. B. Is a New Trial Required? B. Is a New Trial Required? Where it appears that the prosecutor has made an improper argument to the jury, this Circuit has established a standard to evaluate whether a new trial is required. Although we have used slightly varying terminology in describing [the relevant] factors, the common denominators are (1) the severity of the misconduct; (2) the context in which it occurred; (3) whether the judge gave any curative instructions and the likely effect of such instructions; and (4) the strength of the ____________________ 3 In its charge to the jury, the trial court did state generally that the government had the burden of proof, that the defendants' had a constitutional right not to testify, and that the jury should not draw any negative inferences from the exercise of that right. These comments, however, in no way specifically addressed the prosecutor's improper remark. -10- evidence against the defendant. United States v. Manning, 23 F.3d 570, 574 (1st Cir. 1994) ______________ _______ (citations omitted). We treat these factors in order, to determine if the prosecutor's comment was harmless. First, as we discussed above, we believe that the prosecutor's argument constituted a violation of the Griffin _______ rule. Additionally, we believe that the comments were, in a sense, deliberate. In his closing argument, the prosecutor had constructed an analogy based on the facts of the case, with certain rhetoric significantly repeated, which appeared to be planned. We do not believe that the prosecutor intentionally intended to influence the jury by commenting on Hardy's silence, and we hope that our belief is not misplaced. We do believe, however, that when preparing or reviewing his proposed closing, the prosecutor should have known that such a comment was improper. Second, we point out that this comment was made against a backdrop where the possibility that Hardy would receive a fair trial was already in danger -- that is, the prosecutor's closing was not an isolated instance of misconduct. See United States v. ___ _____________ Capone, 683 F.2d 582, 586 (1st Cir. 1982). In Moreno, 991 F.2d ______ ______ at 947-51, we addressed several arguments, (two in the majority opinion, two more in the dissent) which Hardy has also raised in this appeal, relating to improper arguments made by the government during trial. Our conclusions in Moreno are equally ______ applicable to this case. -11- In Moreno, we noted that in the prosecutor's opening ______ remarks, he stated, "the evidence will show that [the police officers] were doing their jobs protecting the community that has been plagued by violence, senseless violence, shootings and killings. That's why they were there and that's why we're here today." Moreno, 991 F.2d at 947. We concluded that because ______ there was no evidence in the case about "senseless violence" or "shootings and killings," it was patently improper for the prosecutor to make those remarks. Id. The remarks played upon __ the jury's emotional reaction to neighborhood violence and was outside the bounds of legitimate argument. Id. __ We were equally disturbed by a second argument by the prosecutor which not only reiterated the senseless violence theme, but also established a second departure from the "straight and narrow." Id. at 948. The prosecutor argued in his closing __ that the shotgun was not just tossed away but deliberately concealed, and continued: "Forget about the fact that maybe Mr. Hooker [who lived nearby] or his wife or his three kids might come out and look at the gun and get their heads blown off. But I'm sure Mr. Hardy had other things on his mind going through there, like getting away from the cops." Although we found that both of these arguments were improper, we found that the errors were harmless as they related to Moreno.4 ____________________ 4 We stated that the prosecutor's comments about the danger to Mr. Hooker and his family, although improper, were harmless when considered against Moreno, in part, because the objectionable remarks did not directly relate to Moreno. Moreno, 991 F.2d at ______ 948. The improper remarks, however, did have a greater effect on -12- The dissent found two more arguments made by the prosecutors to be troublesome. The prosecutor vouched for a government witness, intimating that that witness possessed some information beyond the evidence presented. Id. at 951 __ (Torruella, J., dissenting). The prosecutor also improperly disparaged defense counsel, by stating that they were paid to see things in a different way, defense counsel was talking out of both sides of his mouth, and that one defense argument was meant to divert the jury's attention. Id.; see, e.g., United States v. __ ___ ____ _____________ Boldt, 929 F.2d 35, 40 (1st Cir. 1991) (finding that the _____ prosecutor's statement that "it's a favorite defense tactic to try to get you to focus on unnecessary facts" was improper, especially in light of the institutional nature of the comment which cast suspicion on the role of defense counsel in general). The jury was therefore exposed to a number of emotional and prejudicial arguments which potentially interfered with its ability to appraise the evidence objectively and dispassionately. Third, while the trial court gave a limiting instruction, and Hardy's counsel did not request a stronger instruction, we do not believe that the curative effect of the judge's instruction negated the effects of the prosecutor's constitutional indiscretion. Whether a curative instruction is sufficient to avoid prejudice depends on the impact of the remark ____________________ Hardy's ability to get a fair trial, because the remarks did relate directly to his alleged actions. -13- taken in the context of the whole of the evidence, including any other aggravating remarks or circumstances that may increase the risk that the improper remark did affect the outcome. An improper comment that may seem insignificant where the evidence is overwhelming can assume a very different aspect in a close case. This is such a close case. Finally, the strength of the evidence proffered against Hardy was not overwhelming. First, the government's case against Hardy largely rested on the credibility of Officer Garvey. Therefore, if the jury disbelieved, or had questions about, Officer Garvey's testimony, we do not believe that Hardy would have been convicted. Second, the jury was required to draw a number of inferences in order to convict Hardy. No officer ever saw Hardy possess either the pistol or the sawed-off shotgun. While Officer Garvey testified that after he stopped Hardy, he heard a soft thud as Hardy raised his arms, Garvey never saw a gun in Hardy's hand, or fall from his hand, despite the fact that he was only two to three feet away from Hardy. Rather, the officers found the pistol later, in the area where Hardy was stopped. Additionally, other officers found the shotgun hidden in an area that Hardy had seemingly passed through, but nobody saw Hardy dispose of the weapon there. There were also other men stopped in the area who could have somehow been responsible for the guns. We do not believe that this circumstantial evidence, which for the most part rested on Officer Garvey's credibility, clearly established Hardy's guilt. Moreover, in light of the -14- prosecution's comment, the jury may very well have wondered, either consciously or subconsciously, what Hardy had to say about the extent of his involvement, and concluded that he must have had something to hide because of his failure to testify. The district court did not evaluate these relevant factors on the record to determine if a new trial was warranted in light of the prosecutor's improper closing argument, when Hardy moved for a mistrial. Because all of these factors cut in favor of a new trial, we believe that the district court abused its discretion when it denied Hardy's motion. The government improperly commented on Hardy's failure to testify, and in light of the government's other improper comments and the evidence presented, we believe that this constituted reversible error. See, e.g., United States v. Barton, 731 F.2d 669, 675 (10th Cir. ___ ____ _____________ ______ 1984). For the foregoing reasons, we vacate Hardy's _____________________ convictions and order a new trial. _________________________________ -15-