# United States Court of Appeals

## For the First Circuit

No. 08-1810

CARLOS LUIS GOMES,

Petitioner, Appellant,

v.

SUPERINTENDENT BERNARD BRADY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Stahl, and Lipez,
Circuit Judges.

Leslie W. O'Brien, by Appointment of the Court, for appellant.
Randall E. Ravitz, Assistant Attorney General, with whom Martha Coakley, Attorney General, was on brief, for appellee.

May 6, 2009

**STAHL**, <u>Circuit Judge</u>. Carlos Luis Gomes was convicted in Massachusetts Superior Court of first degree murder. After exhausting his state court remedies, Gomes sought a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in federal district court, alleging that a prosecutorial comment during summation violated his Fifth Amendment rights and that his trial counsel was constitutionally ineffective. The district court denied the petition, and we affirm.

## I.

We relay the facts as recounted by the Massachusetts Supreme Judicial Court ("SJC"), which affirmed Gomes's conviction. <u>Commonwealth</u> v. <u>Gomes</u>, 443 Mass. 502 (2005); <u>see</u> 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."). At approximately 12:30 a.m. on October 30, 1999, Gomes and his brother Moses Rivera (also known as Tan) arrived at a Fall River, Massachusetts apartment shared by four women, Nancy Cardoza, Melissa Latour, Holly Latour, and Nicole Soares. Gomes and his brother brought a bottle of vodka and an orange drink and socialized with Cardoza and Melissa.

Around 2:30 a.m., Soares, who at the time was fourteen years old, returned home. At the trial, she testified that she went to the apartment bathroom where she saw Tan talking on a cell

phone and Gomes, who appeared to be intoxicated, bagging cocaine.[1] When she asked what the brothers were doing, Tan told her to "mind [her] fucking business."

Herminio Gouveia, the victim, first arrived around 2:15 a.m., looking for a person not in the apartment. When he returned within the hour, Soares, who was familiar with him, invited him into the apartment. Gomes and Tan emerged from the bathroom, and Gouveia asked Gomes if he could have some vodka, a request that Gomes denied. Cardoza then announced that everyone should leave, but Tan requested one additional drink to which Cardoza agreed. Tan then asked Gouveia if he wanted a drink, and Gouveia, who could not hear the question over the loud music playing in the apartment, followed Tan into the kitchen for clarity. When Tan asked again whether Gouveia would like a drink, Soares advised Gouveia to decline, which he did.[2]

Gomes became upset, suggesting that Gouveia had disrespected his brother, and a physical altercation ensued. At some point, Gomes pulled out a gun, and the fight moved from the kitchen to the living room and finally to Cardoza's bedroom, where

---

[1] Prior to impanelment, the Superior Court held a hearing on the defense counsel's motion in limine regarding Soares's anticipated testimony that she had seen Gomes bagging cocaine. The court ruled that Soares lacked the competency to identify the white, powdery substance as cocaine.

[2] At trial, Soares testified that she told Gouveia to refuse a drink because she had seen "them" putting vodka, orange juice, and cocaine into a glass.

Gouveia asked Gomes, "What are you going to do with that? . . . Let's go outside. Take this outside." Cardoza threw a pair of cast iron candlesticks at Gomes, imploring him to put away the gun; Melissa screamed and similarly begged Gomes to put down the gun; and Tan and Ricky Lopes, who had arrived around the time the altercation began, told Gomes to put away the gun. Meanwhile, Gomes continuously repeated, "Fuck this nigger," and finally, shot Gouveia in the forehead. Gouveia died from the single gunshot.

After the shooting, Gomes and Tan fled to the Maine home of Andrew Tibbets, a friend, where Gomes told Tibbets about the killing and his disposal of the gun he used, a .38 revolver. On November 8, 1999, police officers in York, Pennsylvania apprehended Gomes. During his booking, Gomes told an officer he was glad that he had been found because being on the run was hard. He also stated that he had not meant to kill anyone. Gomes's fingerprints were found on the vodka bottle and glasses at the apartment. A single .38 caliber bullet was removed from Gouveia's head, and a medical examiner opined that the victim had been shot from a distance of between six inches and three feet.

At trial, Soares testified that she had seen Gomes bagging cocaine, information which the trial judge previously had precluded, but Gomes's attorney did not object. However, when Soares later testified that she saw Gomes put cocaine into the glass offered to Gouveia, the defense counsel objected. The judge

sustained the objection and instructed the jury that "[t]his witness has no competency at all to tell if it's coke or what it is, and you are to totally disregard that. Totally, absolutely. That's guesswork."

Gomes, who did not testify, called to the stand two law enforcement officers and a private investigator in an attempt to elicit inconsistencies and call into question the credibility of some of the state witnesses. During his closing argument, the prosecutor stated,

> You heard from the witnesses. I'll talk a little more about them in detail as we go along, but the only one in this courtroom that I've heard say that it wasn't the defendant, the only person who took the stand to say that was [the defense counsel], because you heard from Nancy Cardoza, you heard from Nicole Soares, you heard from Melissa Latour, you heard from Anthony Tibbets, it was him. And they're all telling you the same thing. This is a fight over a drink.

Gomes's trial counsel objected on the ground that the prosecutor "misspoke" in suggesting that the defense counsel had taken the stand to testify. The court later instructed the jury members that they should not draw any inferences against Gomes because he had not testified and that statements of the lawyers were not evidence.

The jury subsequently found Gomes guilty of murder in the first degree, and the Superior Court denied his motion for a new trial. Gomes appealed the decision to the SJC which affirmed the judgment and denied the motion for a new trial. Gomes's petition

for habeas relief was denied by the federal district court on May 4, 2006.

## II.

Gomes's appeal raises two issues. First, he argues that the prosecutor's comment during summation violated his Fifth Amendment rights. Second, he contends that he was deprived of his Sixth Amendment rights because his trial counsel did not object when Soares testified that she saw Gomes bagging cocaine in the apartment bathroom. When evaluating the district court's denial of habeas corpus relief, we review its factual findings for clear error and mixed questions of law and fact de novo. Malone v. Clarke, 536 F.3d 54, 62 (1st Cir. 2008).

The SJC previously adjudicated both of Gomes's federal claims and applied standards of review as favorable to Gomes as the relevant federal standards. See Obershaw v. Lanman, 453 F.3d 56, 65-66 (1st Cir. 2006). Thus, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, Gomes "must demonstrate that the state court's resolution of his . . . claim[s] 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Malone, 536 F.3d at 62 (quoting 28 U.S.C. § 2254(d)(1)).

A state court determination is "contrary to" clearly established law if the court "applies a rule that contradicts the

governing law set forth" by the Supreme Court or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Meanwhile, a state court unreasonably applies clearly established federal law if it "correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply." Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007). Because we conclude that the SJC's resolution of both issues raised by Gomes was neither contrary to nor an unreasonable application of clearly established federal law, we affirm the district court's denial of habeas corpus.

## A. Fifth Amendment Claim

The Fifth Amendment, which provides that a criminal defendant has the right not to testify at his trial, U.S. Const. amend. V, "forbids . . . comment by the prosecution on the accused's silence," Griffin v. California, 380 U.S. 609, 615 (1965); see id. at 614 ("What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is

quite another."); United States v. Roberts, 119 F.3d 1006, 1014 (1st Cir. 1997) ("It is axiomatic that the defendant's right against self-incrimination, as protected by the Fifth Amendment, forbids the prosecution from commenting on an accused's failure to take the stand and testify on his own behalf.").  The rule set forth in Griffin therefore protects against comments, even unintentional ones, which invite the jury to draw adverse inferences about the defendant's choice not to testify.  United States v. Akinola, 985 F.2d 1105, 1111 (1st Cir. 1993); United States v. Mietus, 237 F.3d 866, 871 (7th Cir. 2001).

To decide whether Gomes is entitled to relief, we engage in a two-pronged analysis of the prosecutor's statement.  First, we determine whether the comment offended the Fifth Amendment by insinuating improperly that Gomes's failure to testify was evidence of guilt.  Griffin, 380 U.S. at 615.  Second, we ascertain whether the comment had a "substantial and injurious effect or influence in determining the jury's verdict" such that reversal is warranted.  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); Medina v. Matesanz, 298 F.3d 98, 99 (1st Cir. 2002).  We employ this demanding "actual prejudice" standard on collateral review because the "role of federal habeas proceedings . . . is secondary and limited."  Brecht, 507 U.S. at 633.

Both the SJC and the district court found that the prosecutor's statement during his closing argument impermissibly commented on Gomes's decision to remain silent. To determine whether a prosecutorial comment offends the Fifth Amendment, we consider "whether, in the circumstances of the particular case, 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" United States v. Glantz, 810 F.2d 316, 322 (1st Cir. 1987) (quoting United States v. Monaghan, 741 F.2d 1434, 1437 (D.C. Cir. 1984)). "A prosecutor's comment does not therefore need to be direct; rather, a prosecutor may run afoul of the rule in Griffin by making such comments inferentially." United States v. Hardy, 37 F.3d 753, 757 (1st Cir. 1994).

We consider the challenged comment within the context of the facts of the case to evaluate its meaning. United States v. Robinson, 485 U.S. 25, 33 (1988); United States v. Lilly, 983 F.2d 300, 307 (1st Cir. 1992). See, e.g., Hardy, 37 F.3d at 757-58 (prosecutor violated the Fifth Amendment by stating that the defendants were "still running and hiding today"); Akinola, 985 F.2d at 1111 (prosecutor's statement that the defendant had left "unexplained" his pre-arrest behavior, while "perhaps unfortunate," nonetheless did not "stray into forbidden territory"); United States v. Skandier, 758 F.2d 43, 45 (1st Cir. 1985) (prosecutor's

-9-

question in summation as to how the defense counsel would explain certain events was improper in a case where the defendant had not taken the stand). Here, in a manner not unlike the closing argument in Skandier, the prosecutor indicated that only Gomes's attorney had "take[n] the stand" to argue that Gomes had not shot Gouveia. The phrase "take the stand" is a direct allusion to the act of testifying. While a prosecutor is given some leeway to comment on the evidence, Roberts, 119 F.3d at 1014-15, a jury here could interpret the prosecutor's choice of words to reflect on Gomes's decision not to take the stand. Such an inference runs afoul of the Fifth Amendment protection against self-incrimination. Thus, we find the SJC's conclusion that the prosecutor's comment was improper neither contrary to nor an unreasonable application of clearly established law.

Having concurred with both the SJC and the district court that the prosecutorial comment was improper, we also agree that the comment did not have a substantial and injurious effect on the verdict to warrant reversal.[3] The single remark was "an isolated

_____

[3] The SJC ruled that the comment was harmless error beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18 (1967). Because we take this case on collateral review, we need only ensure that the comment did not have a "substantial or injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623. See Evans v. Thompson, 518 F.3d 1, 12 n.7 (1st Cir. 2008) ("For habeas purposes, where state law is explicitly more favorable to defendants than the federal standard, we will presume the federal law adjudication to be subsumed within the state law adjudication.") (quotation omitted).

instance of misconduct," cf. United States v. Cox, 752 F.2d 741, 746 (1st Cir. 1985), and the evidence against Gomes was compelling.[4] Compare Delaney v. Bartee, 522 F.3d 100, 105 (1st Cir. 2008) ("Given this overwhelming evidence of a guilty conscience, we conclude that the two additional questions posed by the prosecution did not have a substantial and injurious effect or influence in determining the jury's verdict.") (quotation omitted) with Hardy, 37 F.3d at 759 ("An improper comment that may seem insignificant where the evidence is overwhelming can assume a very different aspect in a close case. This is such a close case."). And although the trial court in this case did not offer immediate instructions on what the SJC described as the prosecutor's "slip of tongue," compare Lilly, 983 F.2d at 306 with Roberts, 119 F.3d at 1015, it did provide the standard instructions on the defendant's right not to testify and the purpose of closing arguments. Cf. Akinola, 985 F.2d at 1112 n.4 ("[W]hile the court's immediate curative instruction . . . made no mention of the Fifth Amendment, the court twice gave the jury Fifth Amendment instructions, including once just before deliberations. Based on that combination of instructions, we are satisfied that any error was

---

[4] During the five-day trial, the state presented evidence that the bullet came from the type of gun Gomes described using; Gomes's fingerprints were found at the crime scene; Gomes told a police officer that he "didn't mean to kill anyone;" Gomes admitted to Tibbets that he had shot the victim; and several eyewitnesses testified that Gomes shot the victim.

-11-

rendered harmless."). In light of the evidence against Gomes, we agree with the district court's assessment that though the prosecutor's comment was improper, it did not satisfy the Brecht standard for reversal. Thus, the harmless error decision of the SJC was not contrary to nor an unreasonable application of federal law.

Gomes argues alternatively that the evidence supporting a first degree murder conviction is relatively weak such that the prosecutor's improper statement had prejudicial effect. We disagree. First degree murder requires premeditation, but under Massachusetts law, premeditation "may occur in a few seconds," Commonwealth v. Coren, 437 Mass. 723, 730 (2002) (quotation omitted), and "after only momentary thought," Gomes, 443 Mass. at 510. The evidence at Gomes's trial showed that

> [w]hile carrying a loaded handgun, the defendant started a fight with the victim and then pulled out a gun. The defendant pushed the victim and shouted obscenities at him while others were imploring him to put the gun away [including one who threw a set of candlesticks at him]. Two witnesses testified that they saw the defendant shoot the victim.

Gomes, 443 Mass. at 508. This progression of events amply supports a finding of premeditation such that we have no trouble agreeing with the SJC and the district court that the prosecutor's comment, which in any event raised the issue of the shooter's identity and not premeditation, did not have a substantial and injurious effect on the verdict.

-12-

**B. Sixth Amendment Claim**

Gomes claims that his trial counsel was constitutionally ineffective because his attorney did not object when Soares testified that she observed Gomes bagging cocaine in the apartment bathroom, testimony which Gomes believes impermissibly allowed the jury to conclude that he was a drug dealer. In Strickland v. Washington, the Supreme Court held that a criminal defendant is deprived of the right to effective assistance of counsel where "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. 668, 686 (1984). In a vein not unlike our analysis of prosecutorial conduct, our consideration of this claim requires two steps: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Id. at 687. Both the SJC and the district court determined that the defense counsel's decision not to object was neither deficient nor prejudicial.[5] While we review the district court's denial of habeas corpus relief de novo, Malone, 536 F.3d at 62, Gomes's claim was adjudicated by the SJC, and under AEPDA, we again will only set aside its ruling if it is contrary to or an unreasonable

---

[5] The SJC's standard for ineffective assistance of counsel is "the functional equivalent of the Strickland standard." Lynch v. Ficco, 438 F.3d 35, 48 (1st Cir. 2006).

-13-

application of clearly established federal law, 28 U.S.C. § 2254(d)(1).

Both the SJC and the district court found that the defense counsel's performance was not deficient. A defendant raising a Strickland claim must show that his "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." 466 U.S. at 688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see Knight, 447 F.3d at 15. Essentially, Gomes "has to show that no competent lawyer would have reasonably permitted [Soares's testimony] to be given without objection." Lynch, 438 F.3d at 49.

In his affidavit, Gomes's trial counsel stated that he did not object to Soares's statement as (1) he believed the objection would have been overruled because the court would have permitted Soares to paint a complete picture of the incident and (2) he felt objecting to the testimony would have emphasized it. Gomes, 443 Mass. at 507. The SJC found these explanations not manifestly unreasonable, noting that Soares's testimony was

-14-

"relevant in that it explained the events and background surrounding the murder." Id. at 508. Given our highly deferential review of attorney conduct under Strickland and our similarly deferential review of the SJC's reasoning under AEDPA, we cannot disagree. The defense counsel's choice not to object could reasonably be viewed as a tactical decision. Cf. Scarpa v. Dubois, 38 F.3d 1, 10-11 (1st Cir. 1994) (defense counsel was not making a tactical choice where he displayed an obvious misunderstanding of the elements of the offense with which his client was charged and defenses thereto).

Further, we concur with the SJC and the district court that any ineffectiveness on the part of Gomes's counsel did not prejudice the outcome of Gomes's trial.[6] As we previously have noted, the strength of evidence against Gomes, which the SJC considered in its totality, was substantial. See Mello v. Dipaulo, 295 F.3d 137, 147 (1st Cir. 2002). We thus agree that Soares's observation of Gomes in the apartment bathroom was inconsequential to the jury's verdict given the extensive evidence of guilt with

---

[6] Although the SJC determined that the defense counsel's choice not to object was tactical, it nonetheless reviewed his decision and concluded that Soares's testimony was harmless beyond a reasonable doubt. Gomes, 443 Mass. at 508. See also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) ("This Circuit has held that where the SJC applies its more favorable 'substantial likelihood of a miscarriage of justice' standard, its decision will not be deemed to be 'contrary to' the Strickland criterion.").

which it was presented.[7]  See supra, note 4; Scarpa, 38 F.3d at 16 (finding no prejudice in light of the "clear, uncontroverted, eyewitness testimony . . . [and] the one-sidedness of the evidence.").  Additionally, the trial court issued a strong curative instruction when Gomes's defense counsel did object to Soares's later testimony on cocaine, further militating against a finding of prejudice.

## III.

For the foregoing reasons, we **affirm** the district courts's dismissal of Gomes's habeas petition.

---

[7] Gomes again argues that because the evidence as to premeditation was weak, his defense counsel's decision not to object was prejudicial.  Utilizing our earlier reasoning, we disagree.