# United States Court of Appeals
## For the First Circuit

No. 20-1408

ZEBADIAH G. KELLOGG-ROE,

Petitioner, Appellant,

v.

RICHARD GERRY, Warden, New Hampshire State Prison,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Lynch and Barron, Circuit Judges,
and Burroughs,* District Judge.

Behzad Mirhashem, Assistant Federal Public Defender, District
of New Hampshire, for appellant.
Elizabeth C. Woodcock, Senior Assistant Attorney General,
Criminal Justice Bureau, for appellee.

November 22, 2021

---

* Of the District of Massachusetts, sitting by designation.

**LYNCH**, **Circuit Judge**.  Zebadiah Kellogg-Roe appeals from the United States District Court for the District of New Hampshire's denial of his petition for a writ of habeas corpus, seeking to overturn his 2010 New Hampshire conviction for aggravated felonious sexual assault of a twelve-year-old girl.  Kellogg-Roe v. Warden, N.H. State Prison, No. 15-cv-116, 2020 WL 1452159, at *1 (D.N.H. April 13, 2020).  Kellogg-Roe argues that denial was error because his Sixth Amendment right to autonomy to determine the objectives of his defense was violated when, despite his instructions not to present a defense at trial, his counsel took certain actions to do so.  We affirm the district court's denial of the petition as it correctly rejected Kellogg-Roe's Sixth Amendment claim.

## I.

The facts in this case are drawn from the state postconviction court's decision and related documents.  Kellogg-Roe v. Edmark, No. 217-2018-cv-281 (N.H. Super. Ct. Jan. 8, 2019).  In reviewing federal habeas petitions, "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. 2254(e); see also Jewett v. Brady, 634 F.3d 67, 70 (1st Cir. 2007).  Kellogg-Roe does not challenge the correctness of the state court's factual description.

Kellogg-Roe was charged in March of 2008 in New Hampshire state court with aggravated felonious sexual assault for sexually

assaulting a minor under the age of thirteen. Before trial, at his request, the trial court appointed counsel. He instructed his counsel multiple times to present no defense at all at trial. Counsel informed the state trial judge of the request. The court held a conference in October 2009 to address the matter. The trial court questioned Kellogg-Roe extensively as to his wishes. Not all of Kellogg-Roe's answers were clear. Nonetheless, it was clear that Kellogg-Roe did not want his counsel to present a defense. The trial judge told Kellogg-Roe that he could not direct his counsel to present no defense, noting that he always had the choice of representing himself with counsel on standby, which would place Kellogg-Roe in "complete control" of his own defense.

His request having been denied, Kellogg-Roe proceeded to trial represented by counsel. At trial, Kellogg-Roe's counsel presented an active defense, making an opening statement, cross-examining six of the prosecution's witnesses, and offering three defense witnesses. The prosecution introduced evidence that Kellogg-Roe had had intercourse multiple times with a twelve-year-old girl, the daughter of a friend, and former girlfriend, of his. When the victim took the stand to testify, Kellogg-Roe asked his lawyers not to cross-examine her. Counsel informed the judge of his request. The judge questioned Kellogg-Roe extensively to ensure that he understood that if his counsel did not cross-examine the victim it could be detrimental to his defense. Having

- 3 -

satisfied himself that Kellogg-Roe understood, the judge then permitted trial counsel to forgo cross-examination of the victim as Kellogg-Roe had requested.

It should be noted that Kellogg-Roe's statements to the judge, both before and during trial, were sometimes inscrutable or unresponsive to the question posed. When the trial judge asked him whether he understood that not cross-examining the victim could be harmful to his defense, Kellogg-Roe first replied "I understand that you're going to convict me, Your Honor." Asked again, he answered "I understand that I am in a situation of great gravity . . . I am attempting to be respectful of [the victim's] right to privacy." The judge rephrased his question yet again to try to clarify that Kellogg-Roe understood that not cross-examining the victim could harm his trial strategy, and Kellogg-Roe stated "I stipulate to what you say is true," at which point the trial judge stated "I'll have to accept that." Nevertheless, Kellogg-Roe was clear with the judge that what he wanted was for his attorneys to not present a defense. At the October 2009 conference concerning his request for a "silent defense," Kellogg-Roe said to the judge "[Y]ou are saying that I do not have the right to ask [my lawyers] to stand down and present no defense, if I employ them as lawyers," to which the judge replied "No, you don't have the right to do that, I don't believe."

- 4 -

The jury found Kellogg-Roe guilty on all four counts of felonious sexual assault, and Kellogg-Roe was sentenced to forty years' imprisonment. He appealed his conviction, claiming it was error for the judge not to permit him his preferred "silent defense," and alternately claiming that it was error for the trial court to permit his counsel not to cross-examine the victim in the case. The New Hampshire Supreme Court rejected his direct appeal in an unpublished opinion issued August 22, 2013.

Kellogg-Roe then filed a motion for a new trial in Hillsborough County Superior Court, claiming ineffective assistance of counsel based on his counsel's alleged failure to communicate a five-year plea offer to him. The court denied the motion following an evidentiary hearing. The New Hampshire Supreme Court declined discretionary review.

Kellogg-Roe filed a pro se federal habeas petition in the New Hampshire District Court in April of 2015. The court granted him a stay to allow him to exhaust his state claims and remedies and appointed postconviction counsel to represent him, the same counsel who now represents him on this appeal.

Kellogg-Roe also filed a state habeas petition in Merrimack County Superior Court in May of 2018. In his state habeas petition, Kellogg-Roe raised five constitutional issues, including "[d]enial of right to assistance of counsel by depriving [Kellogg-Roe] of the right to present the defense of his choice."

He argued that, as a defendant, he had a right to control the objectives of his representation. He expounded further on this claim in his reply to the respondent's motion for summary judgment, arguing that the then-recent Supreme Court case McCoy v. Louisiana, 138 S. Ct. 1500 (2018) supported his argument that the Sixth Amendment empowers defendants to direct their attorneys to mount a "silent defense." He specified that this Sixth Amendment right, based in a client's autonomy to direct the objectives of trial, was different from the right to effective assistance of counsel.

The state superior court found that counsel's performance was not deficient under the Strickland standard for ineffective assistance of counsel claims because lawyers' ethical obligations require them to take affirmative steps to defend their clients, and because the trial judge's obligation to maintain an appearance of fair process would not have allowed him to permit Kellogg-Roe's counsel to not make any defense. See Strickland v. Washington, 466 U.S. 668 (1984). The court rejected Kellogg-Roe's state habeas petition on all claims. Kellogg-Roe then appealed to the New Hampshire Supreme Court, which, in March of 2019, once again declined to hear his discretionary appeal. The state superior court decision is the final state court decision which articulates the reasons for the rejection of his claims.

Kellogg-Roe then resumed federal habeas proceedings, filing an amended petition for writ of habeas corpus in June of

2019. Kellogg-Roe asserted six claims for relief, all stemming from alleged violations of his Sixth Amendment rights. The Warden moved for summary judgment.

The court granted the Warden's motion. With respect to the autonomy claim at issue here, the district court found that the state superior court's decision was contrary to clearly established federal law. That was so because the state superior court used the Strickland standard for ineffective assistance of counsel claims, rather than the standard applicable to cases where a client is denied the autonomy to decide the objectives of their defense. Kellogg-Roe, 2020 WL 1452159, at *6-7. The district court thus reviewed Kellogg-Roe's autonomy claim de novo. As to the merits, the court denied Kellogg-Roe's claim, finding that "[t]he decision to silence defense counsel falls squarely in the domain of case strategy and thus does not implicate the right of autonomy secured by the Sixth Amendment." Id. at *8. The district court granted summary judgment in favor of the Warden on all claims, denying Kellogg-Roe's petition for a writ of habeas corpus. Id. at *12.

Kellogg-Roe then appealed to this court in April 2020 on two issues. We granted a certificate of appealability solely on the issue of whether he was denied autonomy to direct the objectives of his defense when his trial counsel presented an active defense contrary to his express wishes.

We review a district court's denial of a petition for writ of habeas corpus de novo. Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015) (citing Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006)).

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which governs petitions for writs of habeas corpus, directs that where a "claim . . . was adjudicated on the merits in State court," an application for habeas shall be denied except in certain cases, including where the state court's adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's determination is contrary to clearly established federal law "if the court 'applies a rule that contradicts the governing law set forth' by the Supreme Court." Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of Counsel for his defence." U.S. Const. amend. VI. In Strickland, the Supreme Court maintained that defendants have a Sixth Amendment right to effective assistance of counsel and articulated the standard for ineffective assistance of counsel

claims. 466 U.S. at 686-87. Counsel's performance at trial is unconstitutionally ineffective only if the defendant can show both that their performance was deficient, and that this deficient performance prejudiced the defense. Id. at 687. Separately, the Sixth Amendment also guarantees a defendant's autonomy to decide certain aspects of their defense in criminal trials. McCoy, 138 S. Ct. at 1508. Fundamental decisions reserved to the client that have been recognized by the Supreme Court are whether to "plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Jones v. Barnes, 463 U.S. 745, 751 (1983). McCoy added a new item to that list: "counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission." McCoy, 138 S. Ct. at 1510.

In McCoy, the Supreme Court considered a case where the defendant, McCoy, on trial for capital murder, instructed his attorney not to concede at trial that he had committed the triple murder he was accused of. 138 S. Ct. at 1506. Predicting that conceding guilt at trial was McCoy's only chance of avoiding the death penalty at the sentencing phase, McCoy's attorney said in his opening statement that there was "no way reasonably possible" that the jury could not conclude, upon hearing the evidence, that McCoy had caused the victims' deaths. Id. After being convicted and sentenced to death, McCoy appealed, and the Supreme Court held in a divided opinion that a defendant has a Sixth Amendment right

to determine whether his attorney will concede factual guilt at trial. Id. at 1512.

The Court reasoned that "[a]utonomy to decide that the objective of the defense is to assert innocence" is protected by the Sixth Amendment because the proper role of the attorney, as assistant, is to make decisions about "trial management." Id. at 1508. Strategic or trial management decisions include "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." Id. (quoting Gonzalez v. United States, 553 U.S. 242, 248 (2008)). Decisions reserved to the client "are not strategic choices about how best to achieve a client's objectives; they are choices about what the client's objectives in fact are." Id. (emphasis in original) (citation omitted). McCoy's decision not to concede factual guilt might not be the wisest strategy for avoiding the death penalty, the Court reasoned, but he might have other priorities, such as avoiding the "opprobrium that comes with admitting he killed family members" or preserving his chance at exoneration, no matter how small. Id. "Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her . . . so may she insist on maintaining her innocence at the guilt phase of a capital trial." Id.

## III.

Below, the district court conducted de novo review after it determined that the state court had applied the incorrect standard, the Strickland ineffective assistance of counsel standard, to Kellogg-Roe's autonomy claim. See McCoy, 138 S. Ct. 1510-11 (holding that where "a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence."). The Warden does not challenge this finding on appeal. Accordingly, we too apply de novo review.

Kellogg-Roe concedes that if we were to adopt his position, it would be an extension of McCoy. Indeed, the right recognized in McCoy differs from the right Kellogg-Roe asks us to recognize in several important respects.

The presentation of an active defense, even over the client's objection, does nothing to subvert the client's desire to maintain his innocence. By choosing to go to trial, as the district court correctly pointed out, Kellogg-Roe availed himself of the presumption of innocence. Counsel did nothing to contradict this presumption. His lawyers' actions -- presenting an opening argument, cross-examining the prosecution's witnesses, and putting forward defense witnesses -- were quite the opposite of conceding guilt. Trial counsel in this case made the typical kinds of

decisions attorneys are charged with in order to protest their client's innocence.

Sister circuits that have considered McCoy's reach have grappled with the question of whether the presentation of evidence of mental illness or the invocation of the insanity defense over a defendant's objection invoke the same concerns that a lawyer's decision to concede a defendant's guilt over the defendant's objection do. See United States v. Read, 918 F.3d 712, 720-21 (9th Cir. 2019) (holding that defendants have a Sixth Amendment right to decide whether or not to mount an insanity defense at trial, recognizing that an insanity defense "is tantamount to a concession of guilt"); but see United States v. Roof, 10 F.4th 314, 352-53 (4th Cir. 2021) (holding that defendants have no Sixth Amendment right to prevent their attorneys from offering mental health mitigation evidence at the sentencing phase of a capital trial after guilt has already been established). But those cases do not have a direct bearing on this case, as Kellogg-Roe does not suggest that his desire to pursue a "silent defense" was motivated by a desire to avoid calling into question his sanity.

Kellogg-Roe's "silent defense" also does not fall into any of the other categories of fundamental decisions that the Supreme Court has reasoned are reserved to the defendant under the Sixth Amendment: "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal."

See McCoy, 138 S. Ct. at 1508. By mounting a defense at trial, counsel did not take any of these choices away from Kellogg-Roe.

When a defendant chooses to avail himself of the right to an attorney, he loses the "power to make binding decisions of trial strategy in many areas." Faretta v. California, 422 U.S. 806, 820 (1975). And while McCoy suggests that "choices about what the client's objectives in fact are" should be left to the defendant alone to make, 138 S. Ct. at 1508, Kellogg-Roe concedes that the record is silent as to what objective his silent defense achieves. He thus has not explained how his desire to pursue a "silent defense" falls outside the realm of trial strategy. Nor has he explained how "assistance of counsel" would have helped him to pursue it, given that he could have invoked his Faretta right to self-representation and seemingly "st[ood] down" himself (with the help of standby counsel, which he appears to have been offered early on in the criminal prosecution when he first expressed his desire to have his counsel play no active role at trial).

Adoption of Kellogg-Roe's position would confuse, rather than clarify, McCoy's careful delineation between decisions reserved to the client and those left to the attorney.

**IV.**

For the foregoing reasons, the decision of the district court is affirmed.