CIKLIN, J.

Introduction

T.W. appeals the trial court’s denial of a motion for dismissal of the charges against him for burglary and injuring a police dog. We conclude that the burglary conviction should have been dismissed because there was no evidence that T.W. intended to aid in the burglary or that he committed any act in furtherance of the burglary. We further hold that the evidence was insufficient to find that the police dog suffered “great bodily harm” under section 843.19(2), Florida Statutes (2010), as a result of his encounter with T.W., and reverse that conviction as well. We also remand for a new disposition hearing for T.W.’s remaining charge, resisting arrest without violence.

Background

The state filed a petition for delinquency on November 5, 2010, accusing T.W. of committing burglary of a conveyance, injuring a police dog, and resisting arrest without violence,[1] based on events occurring on September 26, 2010. On May 20, 2011, the matter proceeded to a non-jury trial.
Deputy Michael Henken, of the Broward County Sheriffs Office, testified that he was on routine patrol around 1:00 a.m. in a marked law enforcement vehicle. He was slowly driving through a neighborhood and patrolling the homes in the area when he came upon two or three young males in and around a Ford Explorer sports utility vehicle (“SUV”), which was parked on the side of the road. As he drove past, he saw that one of the males was actually inside the SUV. He said that another male, T.W., was standing by the passenger door of the SUV with a “stunned” look on his face. Deputy Henken rolled his car past the SUV, stopped, put it in reverse, and returned to the SUV. As he did so, the males scattered on foot. Deputy Henken was unable to catch up to any of the fleeing individuals and thus called for K-9 and helicopter backup.
Next, Deputy Emmanuel Koutsofios testified that he is a K-9 handler whose primary job consists of locating fleeing suspects. He is trained to recognize if a police dog is in pain or injured. He arrived at the scene in response to a request to locate the burglary suspects who had fled. After issuing the standard canine warning,[2] he released his police dog, Rocky, to find the suspects.
Rocky, remaining tethered to a fifteen-foot leash, detected someone near the side of a house. Deputy Koutsofios took Rocky to the backyard of the house, where he issued more police warnings. Deputy Koutsofios then heard the sounds of screaming and scuffling in the backyard near a pool pump and some bushes. He turned on his flashlight and saw T.W. on the ground kicking Rocky, who had detained T.W. by biting his leg. Deputy Koutsofios saw T.W. kick Rocky “several” times with his free leg but could not provide an estimated number of kicks. T.W. reportedly kicked Rocky throughout the dog’s entire facial area.
Deputy Koutsofios testified that he yelled at T.W. multiple times to stop kicking Rocky so the deputy could pull him *241 back, but T.W. did not comply, started to stand up, and then began punching Rocky “numerous times” with a closed fist. Deputy Koutsofios heard Rocky yelp, which he found unusual because Rocky had been hit previously while working but had never before made a similar sound. The deputy also testified that Rocky is trained to “bite and hold” in these situations and will only release a suspect upon command or if the dog’s defensive instincts force him to do so. Rocky released T.W.’s leg and began biting at T.W.’s hand, which was being used to strike Rocky in the face. Deputy Koutsofios indicated that Rocky is trained to tolerate high levels of pain, so the fact that Rocky yelped and released T.W. was significant.
Deputy Koutsofios then apprehended T.W., forced him to the ground, removed Rocky, and called for assistance. Deputy Koutsofios noticed that Rocky had blood around the white fur under his chin (most of Rocky’s fur is black). According to the deputy, Rocky “had blood coming from his nose down his mouth and it was all where the white part is and it was on the pool deck as well.”
Deputy Koutsofios’s supervisors instructed him to keep a watchful eye on Rocky for the evening and let him rest. The supervisor indicated that it was not necessary to bring Rocky to a veterinarian or make arrangements to have x-rays taken. The deputy kept Rocky in the living room of his house and vigilantly observed Rocky during the night. At the time of the trial, Deputy Koutsofios said that Rocky was doing fine.
On cross-examination, Deputy Koutsof-ios testified that Rocky was eighty-five pounds and T.W. was a thirteen-year-old child weighing approximately 120 pounds. The deputy indicated that Rocky bit T.W.’s left lower leg so severely that he broke it. The deputy acknowledged that T.W. was bleeding from the bite and some of the blood on the pool deck might have been T.W.’s. Deputy Koutsofios also testified that Rocky suffered no permanent injury as a result of his encounter with T.W. In fact, Rocky was able to return to regular K-9 training the following week.
After the state rested, T.W. made a motion for judgment of dismissal, arguing that the state failed to make a prima facie case for burglary because T.W. never entered the SUV. T.W. also argued that the state failed to make a prima facie case for injuring a police dog, because the statute under which the state chose to prosecute T.W. required proof of “great bodily harm” to the dog. The trial court denied both motions.
In presenting a defense, T.W. testified that he was the male standing on the passenger side of the SUV. He testified that he was accompanying some friends and that they were on their way to meet up with another friend. As a shortcut, they went through a residential neighborhood. One of T.W.’s friends approached the SUV because the friend said he needed money. T.W. testified that he warned the friend not to get into the SUV but his friend entered the vehicle anyway. Thereupon, T.W. told the friend that he was going to leave because he did not want to get in trouble. When asked why he ran, T.W. testified that he knew he was going to be suspected of illicit conduct because his friend was in the SUV by the time Deputy Henken approached. T.W. testified that he was scared.
The trial court ultimately found T.W. guilty of all charged offenses, adjudicated T.W. delinquent, and sentenced him to three concurrent sentences of one year and eight months in a level eight detention program.
*242 On appeal, T.W. challenges the court’s finding of guilt on both his burglary and injuring a police dog charges,
“The standard of review applicable to a motion for judgment of dismissal in a juvenile case is the same as the standard for a motion for judgment of acquittal in a criminal case, de novo review.” A.A.R. v. State, 926 So.2d 463, 465 (Fla. 4th DCA 2006). As such,
In moving for a judgment of dismissal, the movant admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. All reasonable inferences that may be drawn from such evidence must be viewed in a light most favorable to the state.
Id. (alterations removed) (citations and internal quotation marks omitted). “A motion for judgment of dismissal tests the legal sufficiency of the state’s evidence.” A.L.J. v. State, 12 So.3d 873, 874 (Fla. 4th DCA 2009).

Burglary

In the instant case, the state presented no evidence that T.W. actually entered the SUV. As such, his conviction could only be based upon a principal theory of burglary. “In order to be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime.” Theophile v. State, 78 So.3d 574, 578 (Fla. 4th DCA 2011) (citation and quotation marks omitted). Importantly, this court has stressed that “[mjere knowledge that an offense is being committed, mere presence at the scene, and even a display of questionable behavior after the fact, are not, alone, sufficient to establish participation.” Id.
Based upon these sound legal principles, we conclude that the state did not present sufficient evidence to convict T.W. under a principal theory. The state presented no evidence that T.W. did anything to encourage or aid the crime, such as acting as a lookout. Deputy Henken testified that he saw T.W. next to the SUV but not in it and not entering or touching it.
We readily acknowledge that T.W.’s flight after law enforcement arrived displayed questionable behavior. However, “fleeing from the scene when an offense is committed ... does not sufficiently establish participation.” AS.F. v. State, 70 So.3d 754, 757 (Fla. 4th DCA 2011).
Because the state offered no evidence that T.W. (1) intended to aid in the commission of the burglary and (2) actually aided in some way, the burglary conviction must be reversed and this matter remanded to the trial court for entry of a judgment of dismissal as to this count.

Injuring a Police Dog

T.W. was convicted of injuring a police dog, in violation of section 843.19(2), Florida Statutes, which states:
Any person who intentionally and knowingly, without lawful cause or justification, causes great bodily harm, permanent disability, or death to, or uses a deadly weapon upon, a police dog, fire dog, SAR dog, or police horse commits a felony of the third degree....
§ 843.19(2), Fla. Stat. (2010) (emphasis added). The police dog in this case, Rocky, did not die, no evidence of permanent disability was presented, and the state did not attempt to argue permanent disability below or on appeal. As such, the issue before us comes down to whether Rocky suffered “great bodily harm” pursuant to the statute.
*243 Neither section 843.19 nor any Florida case law offers a definition of “great bodily harm” under these types of circumstances. However, cases discussing “great bodily harm” in the context of aggravated battery to a human being provide some guidance. Like section 843.19, section 784.045 (aggravated battery) does not define “great bodily harm.” Nonetheless, Florida courts have generally defined “great bodily harm” as “great as distinguished from slight, trivial, minor or moderate harm, and as such does not include mere bruises as are likely to be inflicted in a simple assault and battery.” See Gordon v. State, — So.3d —, 2011 WL 6016913 (Fla. 3d DCA 2011); Nguyen v. State, 858 So.2d 1259, 1260 (Fla. 1st DCA 2003); Heck v. State, 774 So.2d 844, 845 (Fla. 4th DCA 2000); C.A.C. v. State, 771 So.2d 1261, 1262 (Fla. 2d DCA 2000); Guthrie v. State, 407 So.2d 357, 358 (Fla. 5th DCA 1981). In GAG, the Second District emphasized that the state “must prove more than that the victim suffered some harm.” 771 So.2d at 1262.
After thoroughly reviewing the record and the transcripts, we must conclude that the state did not offer competent, substantial evidence that Rocky suffered “great bodily harm” during his encounter with T.W. While Rocky unquestionably suffered some harm from the encounter, we must note that he was not taken to a veterinarian for any medical treatment and he returned to work within a week. Additionally, it is unclear how much of the blood at the scene of the encounter came from Rocky or T.W. The evidence simply did not support a finding that Rocky suffered “great bodily harm” and we must reverse this conviction as well.

Conclusion

Because the state did not offer sufficient evidence to prove that T.W. acted as a principal to the burglary, his burglary conviction must be reversed and a judgment of dismissal entered in its place. Further, because the evidence did not support a finding that Rocky suffered “great bodily harm,” we must reverse the conviction for injuring a police dog as well with instructions to the trial court that it enter a judgment of dismissal.
Finally, we remand this matter to the trial court for purposes of conducting a new disposition hearing for the remaining misdemeanor conviction for resisting arrest without violence for two reasons. First, the trial court’s sentencing decision in this matter may be affected by the elimination of the two felony convictions. See T.L.T. v. State, 53 So.3d 1100, 1103 (Fla. 4th DCA 2011) (remanding for new disposition hearing after vacating one of the two felony charges because “the elimination of [one of the] charge[s] may affect the court’s judgment as to the propriety of the sentence”). Second, the crime of resisting arrest without violence is a first-degree misdemeanor for which T.W. may not be sentenced to more than one year of commitment. T.W.’s sentence of one year and eight months in a level eight detention program clearly exceeds this one-year limit. See J.D.M. v. State, 82 So.3d 1134, 1135-36 (Fla. 2d DCA 2012) (reversing the disposition order where the trial court sentenced the juvenile to more than one year of commitment to the Department of Juvenile Justice for a first-degree misdemeanor because it exceeded the statutory maximum period of one year and therefore constituted an illegal sentence).

Reversed and remanded with instructions.

WARNER and HAZOURI, JJ., concur.

. The resisting arrest without violence conviction is not being challenged on appeal.

. Deputy Koutsofios testified that the standard canine warning he used was, "It’s the Broward County Sheriff's Office. You’re under arrest. Surrender or I'll release my police dog.”