DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JEFFREY GABRIEL,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-1363

[June 27, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin S. Fein, Judge; L.T. Case No. 15-6568CF10A.

Carey Haughwout, Public Defender, and Claire V. Madill, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Senior, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

In this appeal from appellant's conviction for grand theft, appellant contends that the prosecutor's closing argument merits reversal on multiple grounds. After the prosecutor implied to the jury in closing argument that mere presence at the scene of a crime was sufficient to support a conviction, the court refused to give appellant's requested instruction on "mere presence." The trial court erred in failing to give the appellant's instruction. It also erred in overruling appellant's objection to the prosecutor's references to facts beyond the evidence. Further, the prosecutor referenced facts not in evidence and made several comments negatively reflecting on appellant's right to a jury trial. Because we cannot conclude that the cumulative effect of all of the comments were harmless beyond a reasonable doubt, we reverse.

In 2015, the State charged appellant, Jeffrey Gabriel, by information with one count of grand theft under section 812.014, Florida Statutes (2015), alleging he knowingly obtained the property of American Express,

merchandise at a value of $300 or more but less than $5,000. The State also charged Claudel Thermidor, co-defendant, with criminal use of personal identification information, grand theft, and fraudulent use of a credit card. At trial, a detective testified that he had responded to a home burglary where the homeowner's American Express card was taken. The detective contacted American Express, and he learned the card had been used on the same day as the burglary at several retail stores about a block away from the home. Surveillance footage from the stores showed the co-defendant Thermidor, appellant, and another person checking out of the stores. The footage caught Thermidor handing the stolen credit card to the cashier to purchase merchandise, some of which was handed to Thermidor by appellant.

The detective arrested appellant, who gave a statement. He admitted to being with Thermidor at the stores, claiming he was shopping with Thermidor because Thermidor owed him money over a card game. While the detective took fingerprints from appellant, none matched anything at the scene of the burglary.

Co-defendant Thermidor confessed to his participation and testified at appellant's trial. In consideration of his confession, the State put him in a pretrial intervention program (PTI).

Thermidor knew appellant from his neighborhood, but he wasn't really a friend — more of an acquaintance. Appellant called him on the day of the crimes, saying he had something to show Thermidor. Appellant eventually showed him the credit card that they used in the stores. Appellant did not tell him from where he got it. It was Thermidor's idea for them to go shopping with the card. Thermidor's friend, John, went with them. Appellant gave Thermidor the card to use at the registers, and Thermidor purchased items, some of which were handed to him by appellant.

The State played the surveillance videos to the jury. Thermidor identified himself and appellant in the video. In it, Thermidor is seen handing the credit card to the cashier while both appellant and Thermidor's friend stand by holding merchandise.

On cross-examination, Thermidor admitted he entered PTI and confessed to his crimes with the hopes his charges would be dropped. He paid restitution to American Express. He admitted that in his sworn PTI statement, he confessed he used the stolen card, but he did not mention appellant's involvement. Thermidor conceded that, as part of PTI, he was

2

required to cooperate with the State regarding appellant's prosecution and to testify against appellant.

After additional evidence from an American Express representative was presented, the State rested. The court denied appellant's motion for judgment of acquittal. He presented no witnesses. At the charge conference, appellant requested a "mere presence" instruction, informing the jury that mere presence at the crime scene is insufficient to prove participation. The court denied the appellant's request, but it ruled that appellant could make that argument during closing. The court ruled that it would read the standard instruction on principal liability, which provides:

> If the defendant helped another person or persons [commit] [attempt to commit] a crime, the defendant is a principal and must be treated as if [he] [she] had done all the things the other person or persons did if:
>
> 1. the defendant had a conscious intent that the criminal act be done and
>
> 2. the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually [commit] [attempt to commit] the crime.
>
> To be a principal, the defendant does not have to be present when the crime is [committed] [or] [attempted].

Fla. Std. Jury Instr. (Crim.) 3.5(a).

The prosecutor commenced her closing argument, telling the jury that, "we're all here because [appellant] refuses to take responsibility for his own actions on May 7, 2015. That's why we are here." She contrasted appellant to Thermidor, who "did take responsibility for his actions on that day" and testified against appellant. She repeated this theme multiple times throughout the closing argument.

As the prosecutor discussed Thermidor's recitation of events, she told the jury that in Thermidor's statement to the detective, he confessed and said, "I knew what I did was wrong, but I got the card from [appellant]." Defense counsel objected that those facts were not in evidence, as the

court had disallowed the detective to testify regarding Thermidor's confession to the detective. The court overruled the objection.

During the defense's closing argument, counsel consistently attacked Thermidor and the unreliability of his testimony. He argued that the videos only showed "mere presence" of appellant, which was insufficient to show participation without Thermidor's testimony, stating:

> there is no evidence to prove that [appellant] participated in this theft; this theft and this fraud that Mr. Thermidor admitted to you and has confessed to I don't know how many times now.
>
> That leaves us with [appellant's] mere presence at the store. **The law in Florida says mere presence, even mere knowledge, but mere presence without any participation is not enough to commit**.
>
> So if mere presence is not enough, that leaves you with what? The only witness that mattered in this case, Claudell Thermidor. Every word that man spoke yesterday was covered in reasonable doubt. I think you could ask that guy what time it is and he would equivocate and would not be sure. Even simple questions from the State he wasn't sure about.

(emphasis added). Later, he reiterated that, "Mere presence is not enough. Mere knowledge isn't even enough. The only evidence or testimony that [appellant] knew what Mr. Thermidor was doing that day came from Mr. Thermidor, not a reliable source."

In rebuttal, the prosecutor argued that the court would not instruct that mere presence was insufficient. Her comments suggested that the defense was not accurate in his explanation of the law.

> Let's talk about what defense counsel said about the principal theory again. I will show it to you one more time. **You will not see anywhere in any of your jury instructions that mere presence at the scene of a crime is not enough. What you are going to see is that the person who is being charged as a principal does not even have to be at the scene of a crime to be a principal**. I will show it to you again.

4

(emphasis added).  Defense counsel objected, but the trial court allowed the prosecutor to continue, and she again told the jury that presence was sufficient:

> This what you will have with you when you go back into the jury room.  **To be a principal the defendant does not have to be present when the crime is committed.**
>
> **We can even do one better than that.  He was at the scene of the crime when it was committed.**  It's on the video and everyone saw it.
>
> Ladies and gentlemen, use your common sense.  I'm asking you to bring your common sense back there with you.  [Appellant] was in on it.

(emphasis added).  After rebuttal, defense counsel contended he correctly stated the law and that the prosecutor's argument suggested that he had misstated the law.  Appellant again requested a special instruction that mere presence is not enough, but the court denied the request.

The jury convicted appellant of the lesser-included offense of petit theft.  This appeal follows.

Appellant argues that the court erred in allowing the prosecutor's argument regarding the defense's contention that "mere presence" was insufficient to prove participation.  He contends the State's argument improperly suggested to the jury that defense counsel was misrepresenting the law, and the court erred in refusing to give the special jury instruction on mere presence once the prosecutor had misled the jury on the issue.  We agree.

"While wide latitude is permitted in closing argument, *see Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982), this latitude does not extend to permit improper argument."  *Gore v. State*, 719 So. 2d 1197, 1202 (Fla. 1998).  Misleading a jury on the law constitutes improper argument.  *See Evans v. State*, 177 So. 3d 1219, 1234-35 (Fla. 2015).  We have repeatedly held that, "[m]ere knowledge that an offense is being committed, mere presence at the scene, and even a display of questionable behavior after the fact, are not, alone, sufficient to establish participation."  *T.W. v. State*, 98 So. 3d 238, 242 (Fla. 4th DCA 2012) (alteration in original) (quoting *Theophile v. State*, 78 So. 3d 574, 578 (Fla. 4th DCA 2011)); *see also Dorsainville v.*

*State*, 203 So. 3d 1010, 1012 (Fla. 4th DCA 2016); *A.B., A Child v. State*, 141 So. 3d 647, 648 (Fla. 4th DCA 2014).

A defendant is also entitled to instructions which support his or her theory of defense if there is any evidence to support it. *See Funchess v. State*, 126 So. 3d 1107, 1110 (Fla. 4th DCA 2012). While appellant is not challenging the trial court's initial denial of his request for a "mere presence" instruction, the trial court denied the special instruction because it opined that the standard instruction adequately covered the issue of presence. We fail to understand this logic, as the standard instruction states that the defendant does *not* need to be present to be a principal in the crime. It does not cover the situation where a defendant is present, but he or she takes no action in support of the actual crime. Nevertheless, we do not hold that the trial court erred in denying the request for the mere presence instruction prior to closing argument.

The situation changed, however, when the prosecutor attacked defense counsel's argument that "mere presence" does not constitute sufficient evidence of participation in a crime. She implicitly told the jury that defense counsel was misleading them on the law by telling them that mere presence at a crime scene is not enough to be convicted as a principal. She argued that the legal principle, that mere presence at the crime scene is not enough, was not included in the jury instructions, but that a principal could be convicted even if he was not present. Thus, this was not only a misleading statement regarding the law, but also an improper impugning of the defense counsel's argument. The trial court erred in denying appellant's objection.

The court additionally erred in failing to grant the appellant's renewed request for the "mere presence" special instruction after the prosecutor's improper argument. At that point, it was clear that the trial court's original ground for denying the instruction, i.e., that it was covered by the standard instruction, was refuted by the prosecutor's argument. *See Graves v. State*, 937 So. 2d 1286, 1288-89 (Fla. 4th DCA 2006) (noting the court's failure to give a requested jury instruction is error if calculated to mislead the jury).

The State contends that the prosecutor's argument was simply in rebuttal to defense counsel's argument that only the unreliable testimony of Thermidor connected appellant to the crimes, as the video showed appellant's mere presence at the transactions conducted by Thermidor. However, the prosecutor's argument was misleading and suggested that

6

mere presence at the scene *was* sufficient to prove the crime. In short, misleading arguments are not proper rebuttal.

The trial court also erred in overruling appellant's objection to the prosecutor's comments in closing argument which injected facts not presented in evidence. In discussing Thermidor's testimony, the prosecutor mentioned Thermidor's first statement to detectives in which he said that he got the credit card from appellant. The statement had not been admitted during the trial, but it bolstered Thermidor's trial testimony by showing that his testimony was consistent with his earlier confession to the authorities. After the court overruled appellant's objection, the prosecutor then stated that when Thermidor met with the detective, "he didn't know anything about a [PTI] program. His story is the same. When he was arrested on May 19, 2015, it's the same story he told you yesterday [in trial] . . . ." Appellant's objection was again overruled.

"A prosecutor must confine his closing argument to record evidence and 'must not make comments which could not be reasonably inferred from the evidence.'" *See Spoor v. State*, 975 So. 2d 1233, 1235 (Fla. 4th DCA 2008). In *Spoor*, the defense had argued in closing that the victim's identification of the defendant was suspect because she had not noticed the extensive tattoos on his arms. *Id.* at 1234. During rebuttal, the prosecutor said that the defendant had gotten the tattoos after the crime, but before the trial, so that he could show them in court and challenge the victim's identification. *Id.* We held that such argument, which injected facts not in evidence, was improper, and we remanded for a new trial. *Id.* at 1235; *see also Howard v. State*, 152 So. 3d 825, 829 (Fla. 2d DCA 2014) (finding fundamental error where conviction was based on witness's testimony, and the State improperly bolstered that testimony during closing by referencing information not in evidence).

The prosecutor's argument that Thermidor's testimony was consistent with his earlier statement to the police, which was never introduced, was offered solely to bolster Thermidor's testimony against the defense counsel's attacks on Thermidor's reliability. It was not a fair inference from the admitted evidence.

Given the importance of Thermidor's credibility at trial, any error was not harmless. Thermidor was the only witness who directly inculpated appellant, and he was required to testify against appellant as part of his PTI. Defense counsel was never able to cross-examine Thermidor on the excluded statement. *See Brinson v. State,* 153 So. 3d 972, 975-76 (Fla. 5th DCA 2015) (holding it was improper for prosecutor to refer to facts not

in evidence to bolster the victim's credibility). Moreover, during deliberation, the jury asked to see the detective's investigative report, indicating that it may have been a close call for them to decide appellant's complicity. *See Linic v. State*, 80 So. 3d 382, 393 (Fla. 4th DCA 2012) ("Where, as here, it may have been a close call for the jury and the prosecutor improperly injected facts and inferences that were not supported by the evidence," there was error).

Finally, the prosecutor commented numerous times in closing argument on what she termed appellant's "refusal to take responsibility" for his actions, and she repeatedly compared him to Thermidor, who pled guilty. She repeatedly commented the jury was "here" in court because of appellant's failure to take responsibility. During her opening statement, the prosecutor began, "Ladies and gentlemen of the jury. The reason we are here today is because the defendant, [appellant], is refusing to take responsibility for his actions." She also began her closing argument with the same "refusal to take responsibility" argument and repeated this line multiple times through her argument.

These comments implicate defendant's right to a trial by jury. The State's theme—that appellant refused to take responsibility—violated his right to a fair jury trial and to remain silent. "It is improper for a prosecutor to comment on a defendant's exercise of his right to a jury trial." *Evans*, 177 So. 3d at 1236 (citing *Bell v. State*, 723 So. 2d 896, 897 (Fla. 2d DCA 1998), where prosecutor improperly commented the "only one reason we're here" was because the defendant had the right to a trial). By emphasizing appellant's failure to plead and contrasting him with Thermidor, the prosecutor violated his right to a fair trial.

A prosecutor's argument that the defendant did not want to take responsibility for his actions was found to violate the defendant's right to a fair trial in *State v. Jones*, 734 So. 2d 670, 672 (La. Ct. App. 1999). Just as in this case, the prosecutor in *Jones* compared the co-defendant, who pled guilty and testified against the defendant, to the defendant who pled not guilty and went to trial. Noting that, "[a]n accused has the absolute right not to plead guilty," the court concluded that the prosecutor's comments undermined that right and the presumption of innocence accorded to every defendant. *Id.* at 672-73. The court concluded that this was a structural error in the trial which could not be harmless, noting the presumption of innocence is vital to a fair trial. *Id.* at 673.

While we do not hold that the prosecutor's comments constituted a structural defect in the trial, we condemn the prosecutor's pervasive use

of appellant's "refusal to take responsibility" by going to trial. Such comments denigrate the fundamental principles of the right to jury trial and presumption of innocence. When the prosecutor plans the entire theory of the case around attacking these principles, the defendant is denied a fair trial.

Because of the prosecutor's improper comments, which do not constitute harmless error, we reverse appellant's conviction and sentence and remand for a new trial.

TAYLOR and LEVINE, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***