Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 21, 2022

**2022 CO 28**

**No. 20SC343, *People v. Vialpando*—Plain Error—Prosecutorial Misconduct—Cumulative Error.**

Yolanda Vialpando was accused of running from police in a stolen SUV, crashing into another vehicle, and running away from the scene on foot. At trial, the prosecutor focused on the theme of flight. He described how Vialpando fled in the SUV and ran away on foot, and he stated that Vialpando's "flight continues to this moment" and "has continued up and to this point." Ultimately, a jury convicted Vialpando. At the court of appeals, Vialpando contended that the prosecutor's statements in closing argument about flight were an improper comment on her exercise of her Sixth Amendment right to a jury trial and that the cumulative impact of numerous errors deprived her of a fair trial. A split division of the court of appeals agreed and reversed her conviction.

In this case, the supreme court first considers whether the prosecutor's comments, made during closing argument and concerning flight, were error.

Then, the court reviews whether the other five errors identified by the division amount to cumulative error.

The supreme court concludes that the prosecutor's flight comments were not error and that there was not cumulative error. Accordingly, the supreme court reverses the judgment of the court of appeals and remands to that court for consideration of the remaining issues.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2022 CO 28

### Supreme Court Case No. 20SC343
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA1536

#### Petitioner:

The People of the State of Colorado,

v.

#### Respondent:

Yolanda Ursula Vialpando.

#### Judgment Reversed
*en banc*
June 21, 2022

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
John T. Lee, Senior Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Chelsea E. Mowrer, Deputy Public Defender
*Denver, Colorado*

**CHIEF JUSTICE BOATRIGHT** delivered the Opinion of the Court, in which **JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE HART, JUSTICE SAMOUR,** and **JUSTICE BERKENKOTTER** joined.
**JUSTICE GABRIEL** concurred in the judgment.

CHIEF JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶1 An eyewitness saw an SUV crash and a woman exit the driver's-side door and immediately flee from the vehicle. Inside the SUV, police officers found several items that belonged to Yolanda Vialpando. The police began investigating Vialpando, and the eyewitness identified her as the suspect with 75% certainty. The prosecution charged Vialpando with various crimes connected to the incident, and the matter proceeded to a jury trial.

¶2 In opening statement, the prosecutor focused on Vialpando's alleged flight from the scene after the crash. In closing argument and rebuttal, the prosecutor again referred to Vialpando's flight: He described how she fled in the SUV and then ran away on foot and stated that Vialpando's "flight continues to this moment" and "has continued up and to this point." Defense counsel did not object to these statements.

¶3 Ultimately, a jury convicted Vialpando as charged. She appealed, contending, as relevant here, that the prosecutor's statements in closing argument about flight were an improper comment on her exercising her Sixth Amendment right to a jury trial and that the cumulative impact of numerous errors deprived her of a fair trial. A split division of the court of appeals agreed and reversed her conviction. *People v. Vialpando*, 2020 COA 42, ¶ 1, 490 P.3d 648, 652.

¶4     The prosecution petitioned for certiorari review, and we granted it.[1]   We now hold that the prosecutor's comments, made during closing argument and concerning flight, were not error.   Further, we conclude that there was not cumulative error.   Accordingly, we reverse the judgment of the court of appeals and remand to that court for consideration of the remaining issues.

## I. Facts and Procedural History

¶5     Police officers sitting in a parked car outside a motel saw an SUV pull around the corner of the building, immediately stop, reverse over a curb, and exit the motel parking lot.   Based on this unusual driving, the officers followed the SUV, ran its plates, and discovered that it was reported as stolen.   The officers activated their emergency lights to make a traffic stop, but the SUV sped off.   In

---

[1] We granted certiorari to review the following issues:

1. Whether, where a defendant's flight established elements for several of the charges, the court of appeals improperly reversed for plain error because it concluded the prosecutor's closing argument commenting on this flight implicitly asked the jury to punish her for exercising her Sixth Amendment right to a jury trial[.]

2. Whether the court of appeals erred in finding that cumulative error under *Howard-Walker v. People*, 2019 CO 69[, 443 P.3d 1007], is guided by considering the number of errors against the length of trial, and in concluding that there was cumulative error in this case.

response, based on department policy, the officers turned off their emergency lights and did not pursue the SUV.

¶6 Soon after, the officers saw that the SUV had crashed into another car, seriously injuring that car's driver. A witness, R.H., observed the crash from her car while stopped at a nearby traffic light. R.H. spotted a woman exit the driver's-side door of the SUV and run away.

¶7 While investigating the crash, the officers found a purse inside the SUV. The purse contained several items that belonged to Yolanda Vialpando; namely, her current identification card, an expired identification card, a credit card, and a health insurance card. The SUV also contained several pieces of Vialpando's clothing.

¶8 Based on these items, the officers began investigating Vialpando. One officer showed a series of photographs to R.H., who stated with 75% certainty that Vialpando's photo matched the woman she saw flee from the SUV. Officers then arrested Vialpando, and the prosecution charged her with vehicular assault, vehicular eluding, first degree aggravated motor vehicle theft, and driving under restraint.

¶9 At trial, R.H. testified that the woman who fled was roughly 5'5" to 5'6"; was wearing a lot of makeup; and had long, black, wavy hair. According to R.H., the woman was in her twenties or thirties, but her makeup "made her look younger."

5

R.H. testified that she was only 75% certain when she originally identified Vialpando's photo from the lineup because the woman whom she saw fleeing from the crash had a lot of makeup on, whereas Vialpando's lineup photo depicted her with less makeup. During trial, when the prosecutor asked R.H. to make an in-court identification, she said that Vialpando "could be" the woman she saw flee but she was not 100% certain because Vialpando no longer had long black hair.

¶10 An officer testified that Facebook photos of Vialpando showed her wearing heavy makeup and a longer hairstyle in the past. Additionally, he told the jury that Vialpando's DMV record stated that she was 5′5″ tall, weighed 155 pounds, and had brown hair and brown eyes.

¶11 Vialpando testified at trial. She stated that the day before the crash, someone had robbed her at gunpoint and taken the personal items that the police subsequently found in the stolen SUV. She also testified that she reported the robbery to police the day that it happened—i.e., the day before the crash—and that she was at the hospital with her mother on the day of the crash.

¶12 A police officer confirmed that Vialpando reported the robbery the day before the crash, testifying that she did, in fact, come to the Denver police station to report that an assailant had taken her ID cards, purse, luggage, and personal effects.

6

¶13 From opening statement to closing argument, the prosecutor emphasized Vialpando's flight. The prosecutor began his opening statement by remarking:

> [T]he defendant ran. The defendant had just crashed a stolen [SUV] . . . at a high rate of speed running through a red light . . . into [the victim]. And as [the victim] was still in her car, still recovering from the shock of being T-boned, the defendant ran. The defendant opened the driver's-side door and stepped out and fled. Fled the scene.

The prosecutor repeated this theme throughout opening statement, remarking: "[the SUV] started to run," "the defendant ran," "the defendant . . . ran away," "in the immediate wake of the defendant fleeing," and "the defendant who ran." At closing argument, the prosecutor began by stating:

> Yolanda Vialpando[] ran. A few moments before[,] she had crashed a stolen [SUV] . . . . She opened the driver's-side door and ran . . . . Before that[,] she had run . . . from the officers . . . . The defendant ran. And although she is seated now, *that flight continues to this moment*. But it ends today.

(Emphasis added.) Similarly, the prosecutor ended rebuttal closing with the following:

> The defendant ran that day. She ran from the police, and she ran after she had an accident that left in its wake [the victim] severely injured and in pain to this day. And *that flight has continued up and to this point*. And it ends with you. It ends when you go back to the jury deliberation room and you take out the most powerful tool in this courtroom, a pen, and you end her flight by signing "guilty" . . . .

(Emphasis added.)

¶14 Defense counsel did not object to these statements. Ultimately, the jury found Vialpando guilty as charged.

7

¶15     On appeal, a split division of the court of appeals reversed Vialpando's convictions on two independent bases. *Vialpando*, ¶¶ 1–2, 490 P.3d at 652. First, the majority held that the prosecutor's comments evoking flight constituted plain error because they invited the jury to punish Vialpando for exercising her constitutional right to a jury trial. *Id.* at ¶¶ 41, 47, 490 P.3d at 657. Specifically, the majority held that the prosecutor's comments during closing—that Vialpando's flight "continues to this moment" and "has continued up and to this point"—suggested that she "was continuing to run from responsibility by insisting on a jury trial." *Id.* at ¶ 36, 490 P.3d at 656. The majority asserted that the prosecutor's misconduct unfairly prejudiced Vialpando and was "tremendously improper." *Id.* at ¶ 41, 490 P.3d at 657. The majority further concluded that the error was plain because, given Vialpando's uncontroverted testimony that she reported being robbed before the crash, this was a close case; thus, the comments "cast serious doubt on the reliability of her convictions." *Id.* at ¶¶ 44–47, 490 P.3d at 657.

¶16     Second, the majority held that even if the prosecutor's comments on flight did not constitute plain error, reversal was nevertheless required because of cumulative error. *Id.* at ¶ 49, 490 P.3d at 657. The majority identified five additional errors: The prosecutor (1) made improper analogies to reasonable doubt during voir dire, (2) improperly expressed his personal belief during

8

opening statements and rebuttal, (3) improperly asked Vialpando to opine on the veracity of another witness, (4) mischaracterized evidence, and (5) prompted an officer to improperly opine on Vialpando's guilt. *Id.* at ¶¶ 52–66, 490 P.3d at 658–59. Applying the cumulative error test from *Howard-Walker v. People*, 2019 CO 69, ¶ 25–26, 443 P.3d 1007, 1011–12, the majority concluded that "Vialpando's trial was infected with errors" and that because the six errors "occurred over the course of a relatively short trial" (three days), the errors cumulatively deprived her of a fair trial. *Vialpando*, ¶ 70, 490 P.3d at 659–60.

¶17 Judge Fox dissented in relevant part, stating that the prosecutor's closing remarks evoking flight, "[w]hile possibly inartful," were better categorized as permissible "oratorical embellishment and metaphorical nuance" and, thus, were not improper. *Id.* at ¶ 121, 490 P.3d at 667 (Fox, J., concurring in part and dissenting in part). Regarding cumulative error, Judge Fox concluded that Vialpando received a fair trial because the prosecutor's misconduct was limited and not overly prejudicial and the evidence against Vialpando was strong. *Id.* at ¶¶ 150–51, 490 P.3d at 671–72.

¶18 We granted certiorari and now reverse.

## II. Prosecutor's Comments on Flight

¶19 In considering whether the prosecutor's "flight" comments constituted error, we begin by outlining the appropriate standard of review. Then, we state

9

the test for determining prosecutorial misconduct and the relevant law concerning the Sixth Amendment right to a jury trial. We then apply the law to the facts of Vialpando's case and conclude that the prosecutor's statements, made during closing argument and concerning flight, were not error.

## A. Standard of Review

¶20 Because the prosecutor's comments did not influence the framework of the trial and because Vialpando did not contemporaneously object, we review her prosecutorial misconduct claim for plain error. *See Wend v. People,* 235 P.3d 1089, 1097 (Colo. 2010). Plain error is error that is "obvious and substantial." *Hagos v. People*, 2012 CO 63, ¶ 18, 288 P.3d 116, 120 (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

## B. Prosecutorial Misconduct and the Sixth Amendment Right to a Fair Trial by an Impartial Jury

¶21 Whether a prosecutor's conduct was improper, and thus error, depends on the totality of the circumstances. *Wend*, 235 P.3d at 1096. "Factors to consider when determining the propriety of statements include the language used, the context in which the statements were made, and the strength of the evidence supporting the conviction." *Domingo-Gomez v. People*, 125 P.3d 1043, 1050 (Colo. 2005). Examples of context include "the nature of the alleged offenses and the asserted defenses, the issues to be determined, the evidence in the case, and the

point in the proceedings at which the remarks were made." *Id.* (quoting *Harris v. People*, 888 P.2d 259, 266 (Colo. 1995)).

¶22 Vialpando claims that the prosecutor's comments violated her Sixth Amendment right to a jury trial. *See* U.S. Const. amends. V, VI, XIV; Colo. Const. art. II, §§ 16, 23, 25. "A defendant's exercise of the . . . [Sixth Amendment] right to a trial by jury may not be used by the prosecution to [imply] guilt." *Dunlap v. People*, 173 P.3d 1054, 1080 (Colo. 2007); *accord People v. Rodgers*, 756 P.2d 980, 983 (Colo. 1988), *overruled on other grounds by Miller*, 113 P.3d at 748. This rule applies to both direct and indirect implications. *See Martinez v. People*, 425 P.2d 299, 302 (Colo. 1967). For example, in *Rodgers*, we held that the prosecutor violated the defendant's right to a jury trial when the prosecutor claimed during closing, "[S]ome attorneys . . . [believe that] if you are guilty, you would want to request a jury because they just may not convict you and if you are innocent[,] you never want to request a jury because they just might convict you." 756 P.2d at 982.

¶23 While a prosecutor may not tell the jury to infer guilt from a defendant's exercise of their Sixth Amendment right, a prosecutor may highlight facts in evidence and draw reasonable inferences. *Domingo-Gomez*, 125 P.3d at 1048. In doing so, a prosecutor is permitted to use "oratorical embellishment" and "metaphoric nuance." *Harris*, 888 P.2d at 265–66.

11

## C. Application

¶24    Our initial inquiry is whether the prosecutor's statements, made during closing argument and concerning flight, were an improper comment on the defendant's Sixth Amendment right to a jury trial and, thus, error. To make this determination, we first consider the language used and the context in which the statements were made. *See Domingo-Gomez*, 125 P.3d at 1050.

¶25    During opening statement, closing argument, and rebuttal closing, the prosecutor stated that the defendant fled from the police officers, both in the SUV and then later, on foot. In opening, he stated that "the defendant ran. The defendant opened the driver's-side door and stepped out and fled. Fled the scene." Again, in closing, he remarked that "Vialpando[] ran. A few moments before[,] she had crashed a stolen [SUV] . . . . She opened the driver's-side door and ran . . . . Before that[,] she had run . . . from the officers . . . . The defendant ran." Critically, he said during closing that "although she is seated now, that flight continues to this moment. But it ends today." Additionally, during rebuttal, the prosecutor told the jurors that Vialpando's "flight has continued up and to this point" and that they should "end her flight by signing 'guilty.'"

¶26    We conclude that the prosecutor did not impermissibly imply that Vialpando was guilty because she requested a jury trial. Our determination is guided by the context in which these statements were made, which includes the

12

evidence in the case and the nature of the alleged offenses.  *See Domingo-Gomez*, 125 P.3d at 1050.

¶27    Here, the prosecution presented evidence that Vialpando drove the stolen SUV, fled from the police in the motel parking lot, and, after crashing the car, ran away from the scene on foot.  These facts demonstrate movement and flight.  In addition, Vialpando was charged with vehicular eluding, which required the prosecution to prove that she knowingly eluded a peace officer while being pursued by said officer.  *See* § 18-9-116.5, C.R.S. (2021).  That is, the vehicular eluding charge implicated her evasion, escape, or flight.  Thus, the prosecutor's comments were contextually related to the evidence in the case.  *See Domingo-Gomez*, 125 P.3d at 1048 ("Final argument may properly include the facts in evidence and any reasonable inferences drawn therefrom.").

¶28    In holding otherwise, the division majority relied on two cases—*United States v. Hardy*, 37 F.3d 753, 757 (1st Cir. 1994), and *Howard-Walker*, ¶ 44, 443 P.3d at 1014–15—which both held that the prosecution improperly commented on the defendant's right to remain silent under the Fifth Amendment.  We find both cases inapposite.

¶29    In *Hardy*, two defendants were arrested after a foot chase with police officers and later charged with various firearm-related offenses.  37 F.3d at 755–56.  During closing argument, the prosecutor stated that the defendants were running and

13

hiding on the night of the crime and "still running and hiding today." *Id.* at 757. Neither defendant testified. *Id.* at 758. The First Circuit reasoned that the prosecutor's statements "improperly called attention to the failure of [the defendants] to take the stand and testify at trial." *Id.* at 757. On those facts, the prosecutor's improper reference to the defendants' Fifth Amendment right to silence was unmistakable because it drew direct attention to their absence from the witness stand. That is, the link between the defendants "running and hiding" and exercising their Fifth Amendment right to silence was obvious. Comparatively, any link here between "flight" and the Sixth Amendment right to a jury trial is less apparent. Moreover, Vialpando testified, and the prosecutor's remarks—that Vialpando's "flight continue[d]"—did not draw a direct line to her constitutional right to a jury trial.

¶30 *Howard-Walker* is also distinguishable. There, the defendant (who was accused of burglary) did not testify, and the prosecutor told the jury, "[T]here is only one person in this room that could tell you where all of those items are now and he won't." *Howard-Walker*, ¶ 38, 443 P.3d at 1013. We held that this comment clearly implied the defendant's guilt because he exercised his Fifth Amendment right to remain silent. *Id.* at ¶ 44, 443 P.3d at 1014–15. But in the case before us, the prosecutor made no such pronounced insinuations. In context, his statements did not bring Vialpando's right to a jury trial to the forefront; rather, they drew on

14

the overall theme of flight and were connected to the facts of the case. *Contra Rodgers*, 756 P.2d at 982, 985 (holding that the prosecutor improperly referenced the defendant's right to a jury trial when the prosecutor claimed during closing, "[S]ome attorneys . . . [believe that] if you are guilty, you would want to request a jury because they just may not convict you and if you are innocent[,] you never want to request a jury because they just might convict you").

¶31 We recognize that, as the division majority pointed out, thematic arguments concerning flight are fraught with peril. But here, based on the vehicular eluding charge and the flight evidence pervading this case, the prosecutor's closing statements about Vialpando's continued flight at trial are better considered "oratorical embellishment" and "metaphoric nuance." *See Harris*, 888 P.2d at 265–66. Absent this factual context, however, the result might well be different. Accordingly, we conclude that the prosecutor's flight comments were not error.

### III. Cumulative Error

¶32 We begin this section by discussing the proper standard for reviewing cumulative error. Then we apply that framework to the facts of Vialpando's case and conclude that there was not cumulative error.

### A. Standard of Review

¶33 When reviewing for cumulative error, we ask whether "numerous formal irregularities, each of which in itself might be deemed harmless, may in the

15

aggregate show the absence of a fair trial." *Howard-Walker*, ¶ 24, 443 P.3d at 1011 (alteration omitted) (quoting *Oaks v. People*, 371 P.2d 443, 446 (Colo. 1962)). Furthermore, although a shorter trial may compound the impact of any errors, "the question is not whether the errors were 'brief' or 'fleeting' but whether, viewed in the aggregate, the errors [cumulatively] deprived the defendant of a fair trial." *Id.* at ¶ 40, 443 P.3d at 1014. We now apply that standard to the facts of this case.

## B. The Five Remaining Errors Identified by the Division

¶34 Having already decided that the prosecutor's flight comments were not error, we are left with five remaining errors that the division majority identified — four instances of prosecutorial misconduct, plus one evidentiary error. Assuming, without deciding, that the division below correctly identified those errors, we review whether, together, they constitute cumulative error. We begin by outlining those five identified errors.

### 1. Illustrations of Reasonable Doubt

¶35 During voir dire, the prosecutor asked potential jurors if they could recognize, beyond a reasonable doubt, the American flag in the courtroom even though it was folded and not entirely visible. *Vialpando*, ¶ 54, 490 P.3d at 658. The prosecutor then asked a potential juror to pretend that she was on the gameshow *Who Wants to Be a Millionaire?* and consider whether she could identify the flag for

the million-dollar question. *Id.* The majority reasoned that analogizing finding the defendant guilty to submitting an answer on a game show trivialized reasonable doubt. *Id.* at ¶ 55, 490 P.3d at 658. Additionally, the majority concluded that illustrating reasonable doubt with iconic images like the American flag could cause jurors to associate the standard with easily recognizable objects, thus easing the State's burden. *Id.* at ¶ 56, 490 P.3d at 658.

## 2. Statements of Personal Belief

¶36 During the prosecutor's opening statement, he told the jury, "I think you'll agree with me at the end of testimony, that the defendant is guilty of the charges," and then later said, "I think you'll agree with me that it was, in fact, the defendant who ran." *Id.* at ¶ 57, 490 P.3d at 658. And during closing argument, the prosecutor told the jury that he did not need to prove why Vialpando made a false report—"or what we believe is a false report"—regarding her reported robbery. *Id.* at ¶ 58, 490 P.3d at 658. The majority reasoned that in each of these three statements, the prosecutor improperly expressed his personal belief that Vialpando was guilty. *Id.* at ¶¶ 57–58, 490 P.3d at 658.

## 3. Questions About the Veracity of Another Witness

¶37 During his cross-examination of Vialpando, the prosecutor asked four different times whether another witness, a police officer, was "mistaken." *Id.* at ¶ 59, 490 P.3d at 658. The majority reasoned that the prosecutor repeatedly asked

Vialpando to opine on the veracity of another witness, which is categorically improper under *Liggett v. People*, 135 P.3d 725, 732–35 (Colo. 2006). *Vialpando*, ¶ 59, 490 P.3d at 658.

### 4. Mischaracterization of the Evidence

¶38 During closing, the prosecutor asked the jury, "why didn't [Vialpando] go out and get a new ID?" even though Vialpando's unrebutted testimony was that she *did* get a new ID. *Id.* at ¶ 60, 490 P.3d at 658–59. The majority concluded that this statement mischaracterized the evidence. *Id.*

### 5. Testimony Identifying Vialpando as the "Primary Suspect"

¶39 During his testimony, the lead investigating officer stated that Vialpando was the "primary suspect." *Id.* at ¶ 63, 490 P.3d at 659. The majority reasoned that this was improper because a witness may not opine on a defendant's guilt and, here, that was the only inference that could be drawn from this testimony. *Id.* at ¶¶ 62, 66, 490 P.3d at 659. The majority rejected the arguments that the officer's testimony was a proper explanation of the steps the police took in the course of their investigation and that the testimony dispelled any implication that the investigation was cursory. *Id.* at ¶¶ 63–65, 490 P.3d at 659.

### C. Whether These Errors Cumulatively Warrant Reversal

¶40 We now consider whether the cumulative effect of these five errors deprived Vialpando of a fair trial.

¶41 Turning first to the prosecutor's illustrations of reasonable doubt, we ask whether they prejudiced the defendant. The majority stated that the prosecutor's references to the American flag and the gameshow trivialized reasonable doubt and lowered the burden of proof by making it seem easy to ascertain. We recognize that analogies like these are perilous and unhelpful. *See Tibbels v. People*, 2022 CO 1, ¶ 25, 501 P.3d 792, 797. Nevertheless, the trial court instructed the jury multiple times that they must follow only the instructions given by the court and not comments by the attorneys, and we presume that the jury followed the court's instructions.[2] *See Johnson v. People*, 2019 CO 17, ¶¶ 14, 16, 436 P.3d 529, 533. Moreover, as Judge Fox's dissent points out, the prosecutor's analogies were brief and isolated, and he did not raise them again in closing. *See Vialpando*, ¶ 114, 490 P.3d at 666 (Fox, J., concurring in part and dissenting in part). Taking these considerations together, on these facts, the prosecutor's illustrations of reasonable doubt did not lower the burden of proof and were not prejudicial.

---

[2] We do not decide today whether the trial court's use of reasonable doubt analogies during voir dire is a separate ground for reversal. That question is not before us. *See Vialpando*, ¶ 87, 490 P.3d at 661–62 ("Because we reverse Vialpando's conviction without regard to the problematic analogies used by the trial court, we do not decide whether the use of those analogies is a separate ground for reversal, on the basis of structural error or otherwise.").

¶42    Next, we address the prosecutor's statements of personal belief as to Vialpando's guilt. A prosecutor may not offer a personal opinion about the defendant's guilt. *See Domingo-Gomez*, 125 P.3d at 1049. Moreover, we recognize that the prosecutor is a government official, and as such, his opinion might carry more weight with the jury, enflaming the overall impropriety. *See Wilson v. People*, 743 P.2d 415, 418–19 (Colo. 1987). Nevertheless, assuming these are improper personal opinions, as Judge Fox's dissent points out, the prosecutor's statements were a small part of his argument, which was otherwise a generally fair summary. *See Vialpando*, ¶ 117, 490 P.3d at 666 (Fox, J., concurring in part and dissenting in part). Furthermore, the prosecutor's comments were brief and inconspicuous, and they were largely tied to his arguments about the evidence. Last, the trial court gave proper instructions on credibility and the presumption of innocence, which helped to ameliorate any prejudice associated with the prosecutor's comments. *See People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010). Overall, the prosecutor's statements demonstrating his personal belief as to Vialpando's guilt were minimally prejudicial.

¶43    Of all the errors, the most significant occurred during the prosecutor's cross-examination of Vialpando, when he asked four different times whether another witness, a police officer, was "mistaken." *See Liggett*, 135 P.3d at 732 ("[A]sking a witness to opine on the veracity of another witness is prejudicial, argumentative,

20

and ultimately invades the province of the fact-finder.").  These types of questions are categorically improper because they distort the trial process.  *Id.* at 730–32.  Here, the prosecutor asked, and Vialpando answered, these categorically improper questions, which invaded the province of the jury.  As a result, the prosecutor's comments about whether the police officer was mistaken were inherently prejudicial.

¶44    The next error that the majority identified concerned the prosecutor misstating the evidence by asking the jury, "why didn't [Vialpando] go out and get a new ID?" even though Vialpando's unrebutted testimony was that she did get a new ID.  Undeniably, prosecutors may not misstate the evidence.  *See Domingo-Gomez*, 125 P.3d at 1048–49.  But even assuming that the prosecutor misstated the evidence, the trial court repeatedly instructed the jury that closing arguments were not evidence, which makes it less likely that the jury was improperly influenced.  Additionally, this fact was not significant, and the jury was capable of remembering that Vialpando testified to the contrary.  Taking these factors together, the prosecutor's comments during closing about Vialpando getting a new ID were not unduly prejudicial.

¶45    Finally, we turn to the officer's testimony identifying Vialpando as the primary suspect.  The majority identified this as error because a witness may not opine on a defendant's guilt, and here, that was the only inference that could be

21

drawn. *See People v. Penn*, 2016 CO 32, ¶ 31, 379 P.3d 298, 305. But as the dissent points out, the prosecutor did not dwell on the officer's statement, nor did either party revisit it during closing. *See Vialpando*, ¶ 147, 490 P.3d at 671 (Fox, J., concurring in part and dissenting in part). Additionally, Vialpando's counsel had the opportunity to cross-examine the officer to clarify his testimony. Thus, we find the officer's testimony to be mildly prejudicial.

¶46 Overall, we hold that the cumulative effect of these errors on Vialpando's trial was slight, especially considering the other evidence against Vialpando that was available to the jury: Vialpando's belongings were found in the stolen vehicle, an eyewitness identified her, and a reasonable juror could find that Vialpando's robbery defense was not credible. True, these errors took place over a short, three-day trial; however, when viewed in the aggregate and against the backdrop of other evidence, they did not deprive Vialpando of a fair trial. Accordingly, we conclude that there was not cumulative error.

## IV. Conclusion

¶47 We conclude that the division erred by determining that the prosecutor's flight comments were plain error. Additionally, we conclude that there was not cumulative error. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court for consideration of the remaining issues.

**JUSTICE GABRIEL** concurred in the judgment.

22

JUSTICE GABRIEL, concurring in the judgment.

¶48 The majority concludes that the prosecution's arguments to the jury that defendant Yolanda Vialpando was continuing to flee by sitting at counsel table during trial were mere "oratorical embellishment" and "metaphoric nuance" and did not impermissibly imply that Vialpando was guilty because she was exercising her right to a jury trial. Maj. op. ¶¶ 26, 31 (quoting *Harris v. People*, 888 P.2d 259, 265–66 (Colo. 1995)). I do not agree. In my view, the prosecution's argument could only be interpreted as faulting Vialpando for exercising her constitutional right to a jury trial, and because flight is evidence of consciousness of guilt, the prosecution was essentially telling the jury that Vialpando's exercise of her constitutional rights somehow evinced her guilt.

¶49 Accordingly, unlike the majority, I believe that the prosecution's argument was improper and that we should expressly disapprove it. The more difficult question for me is whether the error here was plain. Given the demanding standard for establishing plain error, particularly in cases of alleged prosecutorial misconduct, I cannot say that it was. Nor can I conclude that this error, when considered together with the other apparent errors in this case, establishes reversible cumulative error.

¶50 I therefore concur in the majority's judgment.

1

# I. Factual Background

¶51 I agree with the majority's recitation of the pertinent facts and will not repeat those facts here. Because the prosecution's arguments to the jury regarding Vialpando's alleged flight are central to my analysis, however, I will note them again.

¶52 In its closing argument, the prosecution asserted, "And although she is seated now, [Vialpando's] flight continues to this moment. But it ends today."

¶53 Then, during rebuttal argument, the prosecution doubled down on this flight theme:

> The defendant ran that day. She ran from the police, and she ran after she had an accident that left in its wake [a victim] severely injured and in pain to this day. *And that flight has continued up and to this point.* And it ends with you. It ends when you go back to the jury deliberation room and you take out the most powerful tool in this courtroom, a pen, and you end her flight by signing "guilty" for Count 1, 2, 3, and 4.

(Emphasis added.)

# II. Analysis

¶54 I begin by addressing Vialpando's contention regarding the prosecution's above-quoted arguments to the jury as to her alleged flight during trial. I then briefly address Vialpando's assertion of reversible cumulative error.

2

## A. Prosecution's Arguments on Vialpando's Alleged Flight

¶55 Vialpando contends that the prosecution's above-quoted arguments regarding her alleged flight during trial amounted to an improper comment on her Sixth Amendment right to trial. Because Vialpando did not object to these arguments, our review is for plain error. *See People v. Miller*, 113 P.3d 743, 745 (Colo. 2005). Plain error addresses error that was obvious and substantial and that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.* at 750. In the context of plain error review of alleged prosecutorial misconduct, we will reverse only when the misconduct was "flagrantly, glaringly, or tremendously improper." *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)). Recognizing the demanding nature of this standard, we have observed that prosecutorial misconduct in closing argument rarely is so egregious as to constitute plain error. *People v. Constant*, 645 P.2d 843, 847 (Colo. 1982).

¶56 We have long recognized that criminal defendants may not be penalized for exercising their Fifth Amendment right to remain silent. *People v. Rodgers*, 756 P.2d 980, 983 (Colo. 1988), *overruled on other grounds by Miller*, 113 P.3d at 749. We have also long recognized that "[b]ecause a defendant's constitutional right to remain silent cannot be used against him to draw an inference of guilt, it follows that a

3

defendant's exercise of his constitutional right to a trial by jury cannot be used against him to create an inference of guilt." *Id.*; *accord Dunlap v. People*, 173 P.3d 1054, 1080 (Colo. 2007). Accordingly, we have opined that "it is impermissible for a prosecutor to make comments 'which ha[ve] the effect of creating an inference of guilt by reference' to the defendant's exercise of his right to a trial by jury." *Rodgers*, 756 P.2d at 983 (alteration in original) (quoting *People v. Ortega*, 597 P.2d 1034, 1036 (Colo. 1979)). In so stating, we saw no significant difference between a prosecutor's improper comments on a defendant's exercise of the right to remain silent and a prosecutor's comments on a defendant's exercise of the equally fundamental right to a jury trial. *Id.*

¶57 Lastly, as pertinent here, we have observed that evidence of flight and concealment can be admissible to show consciousness of guilt. *People v. Summitt*, 132 P.3d 320, 324 (Colo. 2006).

¶58 Applying the foregoing settled principles to the case now before us, I believe that the prosecution's arguments that Vialpando was continuing to flee by sitting at counsel table during trial could have only one meaning: by exercising her fundamental rights to a jury trial and to have the prosecution prove her guilt beyond a reasonable doubt, Vialpando was fleeing, and her continuing flight was evidence of her guilt.

4

¶59 In my view, the above-described precedents make clear that such an argument was improper, and cases from other jurisdictions support my conclusion.

¶60 For example, in *United States v. Hardy*, 37 F.3d 753, 754 (1st Cir. 1994), the defendants were charged with a number of firearms-related offenses. They exercised their Fifth Amendment right not to testify, and thereafter, in closing argument, the prosecutor asserted:

> [T]hey were running and hiding, running from the police and hiding the evidence from the police. *They're still running and hiding today. The time has come for them to stop running and stop hiding.* The time has come for them to be held accountable for the wrongful acts that they committed on the night of April 18th, 1991 in Boston. That time is now and only you can hold them accountable.

*Id.* at 757.

¶61 The defendants in *Hardy* contended that the foregoing argument constituted an improper comment on the exercise of their Fifth Amendment rights, and the First Circuit ultimately agreed:

> The prosecutor's comment during his closing set up an analogy between what the defendants were allegedly doing on the night of the crime—running and hiding—and what the prosecutor believed they were doing during the trial—running and hiding. Of course, the defendants were not literally running from the trial or hiding during the trial. Rather, they were both in custody and were sitting silently during each day of the proceeding. Neither defendant testified on his own behalf. The natural and necessary implication of the prosecutor's remark was therefore that the defendants were running from the evidence presented against them, and hiding behind their right to

5

> silence during the trial. The prosecutor's comment therefore violated the Fifth Amendment.

*Id.* at 757–58.

¶62 Although *Hardy* involved the Fifth Amendment right against self-incrimination and the present case involves the Sixth Amendment right to a jury trial, I believe that the same analysis that the court employed in *Hardy* applies here. Specifically, the prosecution's comments in closing and rebuttal argument in this case set up an analogy between what Vialpando had done during the alleged crime (i.e., fleeing from the police) and what the prosecution said she was doing during the trial (i.e., continuing to flee). But she was not fleeing from anything at trial. She was sitting at counsel table exercising her constitutional right to a trial at which the prosecution would be required to prove her guilt beyond a reasonable doubt. In my view, the necessary implication of the prosecution's argument was that Vialpando should be faulted—and, because flight evinces consciousness of guilt, an inference of guilt should apply—merely because she had exercised her constitutional right to a jury trial. As we have long made clear, however, just as criminal defendants cannot be penalized for exercising their Fifth Amendment right to remain silent, they cannot be penalized for exercising their Sixth Amendment right to a trial by jury. *See Dunlap*, 173 P.3d at 1080; *Rodgers*, 756 P.2d at 983.

6

¶63    *Gabriel v. State*, 254 So. 3d 558 (Fla. Dist. Ct. App. 2018), is also instructive. There, a co-defendant conceded his guilt, but the defendant did not. *Id.* at 561. The prosecutor then argued in closing, "[W]e're all here because [the defendant] refuses to take responsibility for his own actions on May 7, 2015. That's why we are here." *Id.* The prosecutor then contrasted the defendant's conduct with that of his co-defendant, who did take responsibility. *Id.* The court reversed the defendant's conviction, concluding that the prosecutor's comments "denigrate[d] the fundamental principles of the right to jury trial and presumption of innocence." *Id.* at 564–65.

¶64    Although the prosecution's comments in the present case were not as blatant as the prosecutor's statements in *Gabriel*, I believe that the principles enunciated in that case apply with equal force here. The obvious implication of the prosecution's comments in this case was that by not taking responsibility and conceding her guilt, Vialpando was somehow continuing to flee. Vialpando, however, had no obligation to concede her guilt, and she had every right to put the prosecution to its proof. Accordingly, the prosecution's comments improperly denigrated Vialpando's fundamental right to a trial by jury. *See also State v. Snow*, 144 P.3d 729, 740–41 (Kan. 2006) (concluding that the prosecutor's argument in closing that "the defendant wants his jury trial, he's had his jury trial, and its [sic] time to put an end to this nonsense" (1) improperly inferred that the defendant

7

should have acceded to the state's evidence and waived his right to a trial because of the purported strength of the state's case and (2) implied that the defendant had wasted the prosecutor's and the jury's time because he had exercised his constitutional rights), *disapproved on other grounds by State v. Guder*, 267 P.3d 751, 754 (Kan. 2012).

¶65 For these reasons, unlike the majority, I would conclude that the prosecution's arguments were improper, and I would unequivocally disapprove them. Although to be sure, a prosecutor "need not abandon effective debate techniques or eschew metaphoric nuance in accepting the restrictions inherent in the prosecutorial function," *Harris*, 888 P.2d at 265–66, a prosecutor's license to embellish oratorically does not permit her to make an argument suggesting that a defendant's exercise of the right to trial by jury somehow evinced the defendant's guilt.

¶66 The more difficult question for me is whether the prosecution's comments rose to the level of plain error. As noted above, the standard for plain error in the context of a prosecutorial misconduct claim is a demanding one. A defendant asserting plain error in this context must show that the prosecutor's misconduct was "flagrantly, glaringly, or tremendously improper," *Domingo-Gomez*, 125 P.3d at 1053, and we have observed that prosecutorial misconduct in closing argument rarely is so egregious as to satisfy this standard, *Constant*, 645 P.2d at 847.

8

¶67 Applying these principles here, I cannot say that the prosecution's remarks rose to the level of plain error. Unquestionably, Vialpando's flight from the police was a theme in this case. Moreover, the prosecution's comments did not expressly reference Vialpando's right to a jury trial. And we have noted that the lack of an objection to a prosecutor's argument may indicate defense counsel's belief that the live argument was not overly damaging, despite its appearance in a cold record. *People v. Rodriguez*, 794 P.2d 965, 972 (Colo. 1990).

¶68 For these reasons, although I see the issue as close, I perceive no reversible plain error in the prosecution's improper comments regarding Vialpando's alleged flight during trial.

## B. Cumulative Error

¶69 The question remains whether Vialpando's conviction must be reversed based on the cumulative error doctrine.

¶70 In *Howard-Walker v. People*, 2019 CO 69, ¶ 26, 443 P.3d 1007, 1012, we clarified the governing standard for cumulative error: "[R]egardless of whether any error was preserved or unpreserved . . . , reversal is warranted when numerous errors in the aggregate show the absence of a fair trial, even if individually the errors were harmless or did not affect the defendant's substantial rights."

9

¶71 Here, Vialpando has alleged six separate errors, five of which raised substantial questions of prosecutorial misconduct, including the prosecution's arguments as to Vialpando's alleged flight during trial. The majority assumes without deciding that the division below correctly identified five of these errors (i.e., the five alleged errors other than the prosecution's flight comments) but concludes that the cumulative effect of these errors were "slight" and did not deprive Vialpando of a fair trial. Maj. op. ¶¶ 34, 46.

¶72 My view that the prosecution's flight arguments were improper makes the cumulative error issue far closer for me. This is especially true given that (1) this trial was short (thereby magnifying the effect of the constellation of errors); (2) the identification of Vialpando by the prosecution's principal identification witness was questionable at best (she was only 75% certain of her initial photo identification, and at trial, she testified that Vialpando "could be" the woman that she saw flee); and (3) much of the prosecutorial conduct at issue violated well-settled principles of law. Nonetheless, for the reasons set forth by the majority, maj. op. ¶¶ 32–46, and because the evidence supported a proper argument that Vialpando had, in fact, fled from the police, I cannot say that the errors that occurred in this case affected Vialpando's substantial rights and denied her a fair trial.

## III. Conclusion

¶73    For all of these reasons, although I believe that the prosecution's arguments regarding Vialpando's alleged flight while sitting at trial were improper and denigrated her Sixth Amendment right to a jury trial, I cannot say that this misconduct rose to the level of plain error. Nor can I conclude, on the record before us, that this misconduct, even when considered together with the other errors at trial, was sufficient to establish cumulative error requiring the reversal of Vialpando's conviction.

¶74    Accordingly, I concur in the majority's judgment, albeit not in all of its reasoning.